## PARTRIDGE v. McKINNEY et al.

The law will not presume an abandonment of property in a dam and ditch for mining purposes, from the lapse of time.

The actual adverse possession of land by another party, at the time of the conveyance, will be notice to the purchaser, whose grantors only claim by a possession short of the period fixed by the Statute of Limitations.

Where the whole title of all the parties rests upon possession only, and A sells land to B by a conveyance not recorded, and afterwards, while B is in possession, claiming the entire property as his own, A sells to another party by deed, duly acknowledged and recorded, the second purchaser will be deemed to have purchased with notice, and will not, therefore, be considered a subsequent purchaser in good faith.

In such a case, B will be permitted to show the real state of the case as against the second vendee of A. But where B has left his possession, and at the time when he is out of possession, A sells to another, it is otherwise. Then such second vendee becomes an innocent purchaser for value.

APPEAL from the District Court of the Ninth Judicial District, County of Shasta.

In the month of November, 1853, the defendant Townsend, and one Keller commenced the construction of a dam and ditch, for the purpose of diverting the waters of Clear Creek, to be used for mining purposes. After making some little progress in the work, they, on the 16th of December, 1853, sold one undivided-third interest to plaintiff, by a sealed instrument, which was never acknowledged or recorded. On the 15th of April, 1854, Keller transferred his interest to Townsend by written instrument, not under seal, and not acknowledged or recorded. On the 20th of May, 1854, the work was suspended by agreement of Partridge and Townsend, with the understanding that it should be resumed in the spring of 1855. The cause that induced this suspension of the work, was the fact that a mining-company had a claim in the bed of the stream above the dam; and that it was agreed that this company should work their claim during the year 1854, and that Townsend and Partridge should be at liberty to resume and finish their dam and ditch at any time afterwards. Partridge left the vicinity and went to Marysville, where he remained until May, 1855, when he returned and claimed his interest in the property. In September, 1854, the mining-company, having exhausted their claim, abandoned it, and Townsend at once resumed work, and so far completed the dam and ditch as to let the water into the ditch in December, 1854. There is nothing in the evidence to show that Townsend ever gave Partridge any notice that the mining-company had abandoned their claim; but there is distinct proof that Partridge, in the fall of 1854, notified Townsend that he would return in the spring of 1855 to resume the work. After the return of plaintiff, he did not commence suit until the 22d of May,

1857. On the 29th day of May, 1856, Townsend, by deed properly acknowledged and recorded, conveyed one undivided half of the property to defendant McKinney for the consideration of $5,000; and, on the 15th day of September, 1856, for the same consideration, he conveyed the other undivided-half, by deed regularly acknowledged and recorded, to the defendant Elmore. The defendants, McKinney and Elmore, at once entered into possession, under their respective deeds; and were in possession at the commencement of this suit, claiming the entire property. It was conceded, on the trial, that they had each only paid one-half the purchase-money to Townsend, at the commencement of this suit. The plaintiff sued to recover the possession of one-third interest in the premises, obtained judgment in the Court below, and the defendants appealed.

*Isaac Boggs* for Appellant.

1. That plaintiff has no right whatever to the possession of the property in question.

2. That an action of ejectment is not the remedy to be sought in this case, and can not be sustained upon mineral lands of this State.

3. That plaintiff abandoned his possession to said claim, and thereafter failed, neglected, and refused to satisfy the claims against him for the construction and completion of said ditch, dam, and flume.

4. That McKinney and Elmore are innocent purchasers under Townsend, and, therefore, their title is final and conclusive as against Partridge.

5. That tenants-in-common could not apply to this case, being mineral lands of the general government, and reserved to her own use; that no other title, except that of actual possession, can obtain in such case.

6. That the conveyance to Partridge was no notice to the world, or to innocent purchasers in good faith.

Authorities relied upon to sustain the foregoing :

As to conveyances, see Revised Statutes, p. 517, § 24; Call *v.* Hastings, 3 Cal., 179; Hastings *v.* Benicia, 5 Cal., 315. Ejectment : Winans *v.* Christy, 4 Cal., 70; Adams on Ejectment, 33 to 63, inclusive, together with notes and references, and various authorities therein mentioned, 4th ed. Mines and mining interests, as to property in the same and title thereto : See Hicks *v.* Bell, 3 Cal., 219 ; Stokes *v.* Barrett, 5 Cal., 36; Laird *v.* Stiles, 5 Cal., 120 ; Erwin *v.* Phillips, 5 Cal., 140 ; Eddy *v.* Simpson, 3 Cal., 249. Possession : See Plume *v.* Seward, 4 Cal., 94; Bequette *v.* Caulfield, Ib., 278. Abandonment : Brenthingen *v.* Hutchinson, 1 Watts, 46; Atchinson *v.* McCulloch, 5 Watts, 13; Pfontz *v.* Steel, 2 Watts, 409. Personal property : The Legislature of this

State treats mining-claims and water-ditches as personal property. See Statutes of 1853 and 1857, as to personal mortgages.

*Sprague & McMurtry* for Respondents.

Possession is always *prima facie* evidence of title, and proof of prior possession is enough to maintain ejectment. Hutchison *v.* Perley, 4 Cal., 33 ; Winans *v.* Christy, Ib., 70 ; Plume *v.* Seward, Ib., 94 ; Norris *v.* Russell, 5 Cal., 249 ; Hicks *v.* Davis, 4 Cal., 67.

To constitute an abandonment, there must be a voluntary relinquishment of the possession, coupled with acts or declarations unequivocally indicating an intention not to return and resume the possession. Miller *v.* Cresson, 5 Watts and Serg., 284.

The law will not presume an abandonment from lapse of time merely, unless it be for so long a time as to bar an action for recovery of possession. Williams *v.* Nelson, 24 Pick., 141 ; Brenthingen *v.* Hutchinson, 1 Watts, 46.

BURNETT, J., after stating the facts, delivered the opinion of the Court.

There is nothing in the position that plaintiff had abandoned his interest in the property in dispute. The law could not presume such an abandonment from the lapse of time. (Crandall *v.* Woods, 8 Cal. Rep., 144; Bird *v.* Lisbros, 9 Cal. Rep., 1.) And there was nothing in the testimony, as the Court justly found, to show any intention to abandon.

But the most important point in the case is, whether the defendants, McKinney and Elmore, were entitled to the property, as against the plaintiff, upon the ground that they were subsequent purchasers in good faith and for a valuable consideration, they having first recorded their conveyances. (Wood's Digest, p. 103, § 26.) If this property is to be considered real estate, there can be no doubt as to the point.

In the case of the Merced Mining Company *v.* Fremont, (7 Cal. Rep., 317, 327,) we held that "the owner of a mining-claim has, *in practical effect*, a good vested title to the property ;" and that "his right to protect the property, for the time being, under the peculiar circumstances of the case, was as full and perfect as if he was the tenant of the superior proprietor for years, or for life." And, in the subsequent case of Crandall *v.* Woods, (8 Cal. Rep., 143,) we held that "one who locates upon the public lands, with a view to appropriating them to his own use, becomes the absolute owner thereof, as against every one but the government; and is entitled to all the privileges and incidents which appertain to the soil, subject to the single exception of rights antecedently acquired." So, in the case of Bird *v.* Lisbros, (9 Cal., 1,) we held that "possession is evidence of title, and the party in possession is therefore deemed, in law, to be

the owner; and when he conveys the land to another, he is deemed, in law, not to convey his evidence of title, but the title itself; of which the law, by reason of such evidence, adjudges him the owner, as against all not having a superior title."

In the same case we held, referring to the preceding case of Bird *v.* Dennison, (7 Cal. Rep., 297,) "that when a party relied upon possession as his *sole* evidence of title, he must be held to know the acts of those through whom he claims; and if he claims the benefit of some of their acts, he must share the responsibility of those that may be against him, when another party is, at the the time of his purchase, in the actual adverse possession of the premises. In other words, the actual adverse possession of another party, at the time of the conveyance, will be notice to the purchaser, whose grantors only claimed by a possession short of the period fixed by the Statute of Limitations."

If, in this case, Partridge had sold to Townsend by a conveyance not recorded; and, afterwards, while Townsend was in possession, claiming the entire property as his own, Partridge had sold to another, by deed duly acknowledged and recorded, this second purchaser from Partridge would have been deemed to have purchased with notice; and would not, therefore, have been considered " a subsequent purchaser in good faith;" and Townsend would have been permitted to show the real state of the case as against this second vendee of Partridge. But the facts of this case are very different. The whole title of all parties rested upon possession only. Partridge had once been in possession with the others; but his possession was subsequent to that of Keller and Townsend. The conveyance from them to Partridge not having been recorded, there was no *record* notice that the title to the one-third interest had ever passed to Partridge; and he not being in possession at the date of the separate deeds from Townsend to McKinney and Elmore, they had no notice of any kind, and were, therefore, innocent purchasers for value. Conceding that the possession of Partridge, whilst it continued, was notice *to all* the world, the moment that possession ceased, the notice (which was only the legal *effect* of such possession) also ceased. It is true that the possession of one tenant-in-common is possession for all; but this possession in one for all ceases the moment it becomes adverse to the others. (4 Kent., 370.) Townsend claimed to hold, and did hold, the entire property adversely to Partridge, and could not, therefore, be deemed, in law, to hold for him.

Our conclusion is, that the plaintiff had no right, in this form of action, to recover against any of the parties defendant. Although the question does not arise in this case, as it now stands upon the record—and we, therefore, make no binding decision upon the point—yet we may remark that it would seem, from the testimony contained in the record, that plaintiff would have

a right to an account, and for the value of his interest sold, as against Townsend ; and a remedy against McKinney and Elmore, as debtors of Townsend, under proper circumstances.

For these reasons, the judgment is reversed, and a new trial ordered, with leave to the plaintiff to amend his complaint. We give this leave to amend in order to prevent the bar of the Statute of Limitations.

FIELD, J.—I concur in the judgment.