[Civ. No. 7836.    Third Dist.    Mar. 15, 1951.]

WATERFORD IRRIGATION DISTRICT, Appellant, v. COUNTY OF STANISLAUS, Respondent

Minasian & Steadman for Appellant.

Frederick W. Reyland, Jr., County Counsel, and William R. Mitchell, Assistant County Counsel, for Respondent.

VAN DYKE, J.—Respondent, county of Stanislaus, in the year 1948 levied a tax upon a right owned by the appellant, Waterford Irrigation District, to divert water from the Tuolumne River. The tax was paid under protest and appellant district thereupon brought action in the Superior Court of Stanislaus County for recovery of the sum so paid. The trial court sustained respondent county's general demurrer, without leave to amend, and the question presented by this appeal is whether or not the complaint states a cause of action.

The complaint alleges the following matters: That in 1920 the district purchased the water right in question from the Sierra and San Francisco Power Company; that the district owns no reservoir or facilities for storing water and that its water right is merely a right to divert part of the natural flow of the Tuolumne River, which right was based on appropriation and was never a riparian right nor appurtenant to any land; that by the district's acquisition and holding of the water right the county was at no time deprived of any tax revenue nor was taxable property removed from its tax rolls; that the water is diverted from the river at a point known as the La Grange Dam in Stanislaus County, but that the dam and the land adjacent thereto are owned, not by appellant district, but by the Modesto and Turlock Irrigation Districts; that appellant district owns no land whatever at or near the diversion point nor any interest in La Grange Dam or in the point of diversion; that the water is diverted along with water being diverted for the use and in the right of the other two irrigation districts, which latter districts own the canal leading from the point of diversion; that appellant district's rights therein consist only of the right to have the water flow through the canal along with the water diverted by the other two districts until it reaches points where it is again diverted from said canal into diversion canals owned by appellant district through which the water is carried to land within said district.

Article XIII, section 1, of the Constitution of California provides that all property in the state, except as otherwise in the Constitution provided, and which is not exempt under

the laws of the United States, shall be taxed. It defines property as including moneys, credits, bonds, stocks, dues, franchises and all other matters and things, real, personal and mixed capable of private ownership. It then exempts from taxation property belonging to the state or to any county, city and county or municipal corporation within the state; but from the operation of this exemption there is excepted "such lands and improvements thereon located outside of the county, city and county or municipal corporation owning the same as were subject to taxation at the time of the acquisition of the same by said county, city and county or municipal corporation."

In *Rock Creek Water Dist.* v. *County of Calaveras,* 29 Cal.2d 7 [172 P.2d 863], the Supreme Court held that a water district was a municipal corporation as that term is used in the constitutional provisions above referred to. It expressly overruled *Turlock Irrigation Dist.* v. *White,* 186 Cal. 183 [198 P. 1060, 17 A.L.R. 72], which had held that an irrigation district was not a municipal corporation within the meaning of the same constitutional provision. Although the governmental agency before the court in the Rock Creek case was a water district, it is apparent, from a reading of the opinion, that no distinction was to be drawn between water districts and irrigation districts. Following that decision of the Supreme Court, the District Court of Appeal for the Fourth District, in the case of *Imperial Irrigation Dist.* v. *County of Riverside,* 96 Cal.App.2d 402 [215 P.2d 518], held directly that an irrigation district was a municipal corporation within the meaning of the constitutional provisions referred to and the Supreme Court denied the district's petition for a hearing in that court.

Accepting the force and effect of these decisions, the last one having been rendered after this appeal was initiated, the appellant here claims that notwithstanding it is to be deemed a municipal corporation and that its property may therefore under certain circumstances be taxable, yet the tax in question here is still void for two reasons: First, the appellant says that the tax is void because the water right is not land nor an improvement thereon, and therefore does not come within the exception to tax exemption stated in the Constitution. Next, the appellant contends that to permit the collection of the tax in question is to permit double taxation.

In the beginning it is to be observed that not all property of an irrigation district considered as a municipal corporation is taxable. In fact, it is exempt from taxation except as it may consist of lands and the improvements thereon located without its boundaries and which were at the time of acquisition by the district subject to taxation. There is no contention advanced that when the water right in question was purchased by appellant district from the Sierra and San Francisco Power Company, a corporation, that the same was not then subject to taxation. But appellant contends that the property so taxed, that is, the water right, being an appropriative right and not riparian to nor appurtenant to any land, does not constitute land nor improvement on land within the meaning of those terms as used in the constitutional provisions. This precise point has not, so far as we have been able to learn, been heretofore presented to any appellate court. In the Rock Creek case, *supra,* it appears from the statement of facts contained in the opinion that the plaintiff district there owned ''property situated in defendant taxing county consisting of a dam, reservoir, water rights and easement for ditches, canals and pipe lines'' and that ''defendant levied a property tax on that property which plaintiff paid under protest.'' However, the precise point raised here was not discussed in the opinion, and apparently was not before the court as a separate question distinct from the general question as to the taxability of the water district's property.

In the case of *San Francisco* v. *County of Alameda,* 5 Cal.2d 243-246 [54 P.2d 462], the question of the taxability of water rights owned by a municipal corporation was before the court, but the water rights there involved originated as riparian rights which had been purchased by the city. After declaring the general purpose of the constitutional provisions excepting certain property of municipal corporations from the general constitutional rule of nontaxability as being to safeguard the tax revenues of smaller counties wherein large municipal corporations had purchased or would acquire extensive holdings which would, except for the constitutional provision, be exempt from local taxation, the court declared:

''. . . The question is, whether the water rights acquired by the plaintiff by purchase from the Spring Valley Water Company were included within the term 'land' as used in

the constitutional amendment and as such therefore separately assessable in Alameda County.

"The case was tried on a stipulation of facts from which it appears that the rights acquired by the Spring Valley Water Company were rights to divert the water of Alameda Creek as against lands riparian to the creek. While the right to the waters of the stream is a usufructuary right inuring to the benefit of riparian lands, such rights are inseparably annexed to the soil and pass with a grant of the land, not necessarily as an easement or appurtenance but as parcel of the land itself. [Citing *Miller & Lux* v. *James Co.*, 179 Cal. 689 (178 P. 716).] When the owner has divested himself of a right such as here assessed to the plaintiff, he has parted with an interest in the land as contemplated by the constitutional amendment. It must be assumed that by the grant he has stripped the land of much of its value. In some cases the value of the land severed from the water right might well be negligible for taxing purposes. In such event the county wherein it is situated would be deprived of tax revenues from it the same as if the owner had conveyed to the municipality the title to the land. Such a result would subvert the purposes of the constitutional amendment and render the same ineffectual for the purposes intended.

"The conclusion seems irresistible that when the water rights were owned by the riparians, they were a part of the land itself and formed an important element in the valuation of the land for taxing purposes; that when those rights were severed from the land the valuation of the land for purposes of taxation was or might be materially reduced, and when so severed they should not lose the characteristics which had theretofore attached to them, taking into consideration the objects and purposes of the constitutional amendment. When acquired by the plaintiff they should therefore be deemed to retain those characteristics the same as when owned by the plaintiff's predecessor in interest."

It is evident, we think, from the foregoing that the holding in the opinion quoted from was primarily based upon the stipulated fact that the water rights there taxed were riparian in origin; and the holding that they were embraced within the meaning of the word "land" as used in the Constitution was arrived at by considering the original nature of those rights as having been part and parcel of the riparian

lands. It seems therefore that neither of the cases referred to is decisive of the point presented here, for it is alleged that the water right taxed by the respondent county herein was never riparian, but arose by appropriation and was never appurtenant to any lands.

The nature of a water right by appropriation is discussed at length in Wiel on Water Rights in the Western States, third edition. In section 288 the author formulates the following definition:

"A water-right of appropriation is real estate, independent of the ditch for carrying the water, and independent of ownership or possession of any land and independent of place of use or mode of enjoyment, whereby the appropriator is granted by the government the exclusive use of the water anywhere so long as he applies it to any beneficial purpose; and it is an incorporeal hereditament, solely usufructuary, not conferring ownership in the corpus of the water or in the channel of the stream."

In section 283 the author stated:

"The right to the flow and use of water, being a right in a natural resource, is real estate. [*Hill* v. *Newman*, 5 Cal. 445 [63 Am.Dec. 140].] . . . The statute of frauds, concerning conveyances of real estate, applies to it, and transfers must be by deed. [*Griseza* v. *Terwilliger*, 144 Cal. 456 [77 P. 1034]; *Smith* v. *O'Hara*, 43 Cal. 371; *Oneto* v. *Restano*, 78 Cal. 374 [20 P. 743]; *Dorris* v. *Sullivan*, 90 Cal. 279 [27 P. 216]; *Hayes* v. *Fine*, 91 Cal. 391 [27 P. 772].] The statute of limitations concerning land applies to it. [*Yankee Jim's etc. Co.* v. *Crary*, 25 Cal. 504 [85 Am.Dec. 145].] So do the recording statutes, as between successive conveyances. [*Partridge* v. *McKinney*, 10 Cal. 181; *Lyles* v. *Perrin*, 119 Cal. 264 [51 P. 332].] The right to have water flow from a river into a ditch is real property. [*Lower Kings River W. D. Co.* v. *Kings River & F. C. Co.*, 60 Cal. 408, 410.] . . . The right to take water from a river and conduct it to a tract of land is realty. [*South Tule etc. Co.* v. *King*, 144 Cal. 450, 454 [77 P. 1032].] The right to have water flow through a pipe from a reservoir to and upon a tract of land is an appurtenance to the land. [*Standard V. W. Co.* v. *Round Valley W. Co.*, 77 Cal. 399, 403 [19 P. 689].] An undivided interest in a ditch and in the right to water flowing therein is real property. [*Hayes* v. *Fine, supra.*] And where one person has a right to the flow of water and another has

the right to have a part of such water flow to his land for its irrigation, the right of the latter is real property. [*Dorris* v. *Sullivan, supra*; see also *Stanislaus Water Co.* v. *Bachman,* 152 Cal. 716 [93 P. 858, 15 L.R.A.N.S. 359].] Ditches and water-rights may be sold on execution as real property. [*Gleason* v. *Hill,* 65 Cal. 17, 18 [2 P. 413].] . . . And an action to settle rights is one to quiet title to realty. [*Taylor* v. *Hulett,* 15 Idaho 265 [97 P. 37, 19 L.R.A.N.S. 535].] In Idaho water-rights are declared real estate by statute. . . .

"That the usufructuary right to the flow and use of a natural stream by appropriation is real property is fully recognized. . . ."

Concerning taxation the same author, in sections 284 and 285, has the following to say:

"For convenience, we state here some matters regarding taxation of ditches and water-rights.

"Water-rights are real estate for the purposes of taxation, but should not be assessed separately from the lands to which (if any) they are appurtenant. . . .

"A water-right by appropriation is not only real estate, but has all the dignity of and is an estate of fee simple, or a freehold. It was not always accepted as such in the early days, however. This historical denial that the estate was a freehold we have already traced at much length in the historical chapters; how, before the act of Congress of 1866, it was strenuously urged that the appropriators had no right at all, but were trespassers on the public lands, the United States being the real owner of the right to the water; how the right hence took on many features of a possessory character; how the early cases nevertheless gave to the rights of the pioneers all the recognition and force of freehold estates; and how Congress ratified this by the act of 1866. All doubts were put at rest by that act; and ever since all the freehold remedies are allowed the appropriators in the courts, and their rights have ever since had all the attributes of freehold realty. . . ."

We have inserted the foregoing quotations from Wiel on Water Rights not because we are here primarily concerned with the particular conclusions of the learned author, nor with the exact determinations made by courts, which have many times been conflicting, but in order to determine what was the common concept as to the nature of appropriative water rights when in 1914 the people inserted

into article XIII, section 1, of the Constitution the exception to the general rule of nontaxability of public property with which 'we are here concerned. The problem before us is one of interpretation and the precise thing to be determined is whether or not when the people excepted "land and improvements thereon" from the general exemption they intended to include appropriative waters rights within the meaning of those words as used by them.

Generally, the approach which must be made when interpreting this part of the Constitution has been defined unequivocally by the Supreme Court in the Rock Creek Water District case, *supra,* wherein the court said:

"It is fundamental that the objective sought to be achieved by a statute as well as the evil to be prevented is of prime consideration in its interpretation. . . . And that is true of the constitutional provision here involved. . . . The purpose of clause 2 is 'to protect from the loss of taxable properties, those counties in which municipalities acquire property for the operation of various municipal projects. . . . Prior to the amendment, the property of municipalities lying outside their corporate boundaries was exempt from taxation and that resulted in many instances in the county in which such property was situated losing large sources of revenue, a loss which it could ill afford. The aim of the amendment was to eliminate that condition.' . . . And in line with that policy the term municipal corporation must be given a broad meaning unrestrained by the strict technical sense of the term. . . ."

Quoting and adopting principles declared by Mr. Justice Sloane in his dissenting opinion in *Turlock Irr. Dist.* v. *White,* 186 Cal. 183 [198 P. 1060, 17 A.L.R. 72], the court said:

" 'The direct object of the amendment was to protect and conserve the revenues of the invaded territory, and with that object in view it can make no difference whether the public use acquired is by a city or county, or some other public corporation exercising municipal functions.

" 'No violence is done to the rules of construction under the interpretation of the term "municipal corporations" here contended for. It is common knowledge that in popular usage the term "municipal corporation" is understood as applying to all departments of state organization exercising public functions, and the same general use of the term is common in judicial decisions and with law textwriters. . . .' "

The same guiding rules for interpretation of the constitutional amendments were declared in *San Francisco* v. *County of Alameda, supra,* the court saying:

"The undoubted purpose of the amendment was primarily to safeguard the tax revenues of smaller counties wherein large municipal corporations had purchased, or would acquire, extensive holdings and which would, except for the amendment, be exempt from local taxation. With the exemption in force, the serious financial embarrassment of the counties in which the holdings were situated was a reality. . . . The adoption of the amendment was evidence that the acquisition of such lands and water rights should be without prejudice to the outlying counties whose existence from an economic and government standpoint depended upon the tax revenues derived therefrom. It was therefore provided that such lands and improvements thereon as were taxable at the time of the acquisition of the same by municipalities should continue to be taxable and should not be exempt from local taxation. The fact that the continuing right of taxation should in some instances inure to the benefit of counties not so sorely pressed by reason of the prior exemption, is but an incident and cannot disturb the manifest and general operation of the amendment."

Applying these rules of interpretation so clearly and recently declared by the Supreme Court, and bearing in mind the purposes of the amendment and what we believe to be the common concept of the nature of appropriative water rights, we conclude that they constitute land, as that term is used in the Constitution.

Turning now to the second contention advanced by the appellant district, which is that if the appropriative water right owned by the district be taxable nevertheless the tax here levied is void as constituting double taxation, this matter was presented in a separate cause of action contained in the complaint of the appellant and is claimed to be based upon the following facts as appear from the allegations of that count: In 1948 the county of Stanislaus assessed the land in the appellant district at valuations running from $60 to $130 per acre as contrasted with valuations of $11 to $16.50 per acre on comparable land outside of the district. It is alleged that this difference is due to the fact that the land in the district can receive irrigation whereas

land outside the district cannot. And it is pointed out that this increase in valuation, figured on the 10,000 assessable acres in the district, would amount to approximately $817,500 and a tax income in 1948 to the county of Stanislaus of approximately $47,500. It is alleged the landowners in the district paid this tax and it is further alleged that none of the land within the Waterford Irrigation District was assessed by the county of Stanislaus in the said fiscal year as land exclusive of water right. It is argued that the landowners by the increased valuations on their lands have paid the tax on the lands and on the water right in question and that illegal double taxation has occurred. It is pointed out that the district has no source of revenue other than assessments levied upon the lands within its boundaries and consequently the district, to raise funds to pay the tax levied against it, was required to levy assessments on the same lands that were assessed directly by the county for the water right in the form of increased valuation and taxes on their land due to its benefits.

We think this contention of double taxation cannot be sustained. In *Redwood Theatres* v. *City of Modesto*, 86 Cal. App.2d 907, 920 [196 P.2d 119], this court upon the question of double taxation declared:

". . . In the text of 51 American Jurisprudence, at page 337, supported by numerous authorities, it is said that 'before invalid double taxation may be said to exist, both taxes must have been imposed in the same year, for the same purpose, upon property owned by the same person, and by the same taxing authority.' "

The right here taxed, that is, the appropriative water right, is alleged to have been purchased by the appellant district from its previous owner and we think that, within the meaning of the constitutional exception, it is owned by that district. Taxes levied upon it therefore are not taxes upon the property of the landowners within the district, and consequently the tax fails to meet the test of double taxation, not being a tax upon property owned by the same person.

The judgment is affirmed.

Adams, P. J., and Peek, J., concurred.

A petition for a rehearing was denied April 9, 1951, and appellant's petition for a hearing by the Supreme Court was denied May 10, 1951. Edmonds, J., and Schauer, J., voted for a hearing.