[Civ. No. 8101. Third Dist. Sept. 26, 1952.]

ALPAUGH IRRIGATION DISTRICT, Appellant, v.
COUNTY OF KERN, Respondent.

W. E. James, LeRoy McCormick and Robert E. Moock for Appellant.

Norbert Baumgarten, County Counsel, for Respondent.

VAN DYKE, J.—This is an appeal from a judgment in favor of defendant in an action brought to recover taxes paid under protest. Appellant is an irrigation district and as such is exempt from taxation except as to lands and improvements thereon located outside of its boundaries which were subject to taxation when acquired by the district. (Const., art. XIII, § 1.) The district in proper time filed with the State Board of Equalization a petition for the reassessment of its properties after the same had been assessed for purposes of taxation by the county assessor of the respondent county. A hearing was held and the petition was denied.

After exhausting its remedies before the board the appellant paid under protest that part of the taxes deemed by it to be invalid and filed this suit to recover the amount so paid. Appellant owns 1,444 acres of land within the boundaries of the respondent county. Numerous wells have been drilled into the subsurface strata of these lands, pumps have been installed and the water thus raised to the surface is collected into canals and transported without the county of Kern and into the adjoining county and delivered to the landowners in the above district. The water thus transported is ground water, that is, water which lies below the surface of the ground. For assessment purposes appellant's lands were described in seven parcels of varying acreage. As to six of those parcels the assessor first described what he called a water right related to the parcel and then described the parcel itself. As an example: "100% Int Water Rights All Sec 35 T25 R23. N½ Excl of Water Rights Sec 35 T25 R23 320A. S½ Excl of Water Rights & M.R. Sec. 35 T23 R23 320A." The land, exclusive of water rights, was assessed at about $2.50 per acre with some variations, and, generally speaking, lands surrounding that of the district were assessed at about the same figure. But the water rights ascribed to the various parcels received assessments at a much higher figure. Thus, Section 35 described above as to land value received a total assessment of $1,600, whereas the water rights ascribed to that section were assessed at $20,000, making a total assessment for the section of $21,600, or an average assessment per acre of $33.75. Although some complaint was made by the appellant that the land values alone were as to some parcels excessive, the main contentions revolve around the assessment of the water rights. Appellant states its contentions as follows: That the assessments of parcels 2 to 7 are void for the reason that they are not in proportion to the assessed value of surrounding lands, that the assessments constitute double taxation, that they violate the intent of section 1 of article XIII of the Constitution, that the splitting of the assessments on each parcel is contrary to law, that the assessments are not uniform, that they violate the provisions of the federal Constitution in that the lands are assessed for more than their actual cash value and that the water developed on each parcel is an improvement made by the appellant and therefore not assessable. Additionally, as to one parcel the

appellant takes the position that the assessment is void by reason of uncertainty in description.

The state Constitution provides that the State Board of Equalization shall act as an equalization board in respect of taxes assessed against such public agencies as appellant. ▪ The findings of that board when it sits as a board of equalization pursuant to the Constitution have the same effect as has been ascribed to the findings of the county boards of supervisors sitting as boards of equalization. (*Covert* v. *State Board of Equalization*, 29 Cal.2d 125, 131 [173 P.2d 545].) In *Universal Cons. Oil Co.* v. *Byram*, 25 Cal.2d 353, the Supreme Court said at pages 356 and 357 [153 P.2d 746]:

"... [I]t is well settled in this state that to the authorized county board of equalization has been confided the duty of determining 'the value of the property under consideration for assessment purposes upon such basis as is used in regard to other property, so as to make all the assessments as equal and fair as is practicable'; that in discharging this duty, 'the board is exercising judicial functions, and its decision as to the value of the property and the fairness of the assessment so far as amount is concerned constitutes an independent and conclusive judgment of the tribunal created by law for the determination of that question,' adjudicating necessarily that 'the property is assessed at the same value proportionately as all the other property in the county'; that such adjudication 'cannot be avoided unless the board has proceeded arbitrarily and in willful disregard of the law intended for their guidance and control, with the evident purpose of imposing unequal burdens upon certain of the taxpayers' ... or unless there be something equivalent to fraud in the action of the board'; and that 'Mere errors in honest judgment as to the value of the property will not obviate the binding effect of the conclusion of the board.'"

Appellant does not dispute the applicability of the foregoing, but contends that a case has been made by it, meeting fully the tests imposed and requiring that the county refund the amounts paid to it under protest. At the trial in the superior court there was introduced into evidence the proceedings taken before the State Board of Equalization; and additional evidence was received by the court. It appears from the record that contiguous lands over a considerable area surrounding the lands of appellant are generally of the same character and quality as are the lands of appellant; that these lands, generally speaking, are of the same

value as are the lands of appellant if we consider the land value alone and do not ascribe any assessable value to the right of the district to remove ground water therefrom and transport it to the district's lands; that so far as any witness who testified before the board could testify to the fact the surrounding lands were as productive of water by pumping from wells as are the lands of appellant, that is to say, the ground water conditions are uniform; that the total assessed value ascribed by the assessor to the various parcels of appellant's land is made up in greater part by ascribing an assessability value to the right to pump and transport water therefrom.

Appellant asserts that there was no assessable water right and therefore that the assessable value ascribed to that right and distributed over the parcels of appellant's land is totally excessive since the value of the land without the water right as fixed by the assessor is, generally speaking, proportionate to the assessed value of the surrounding lands. We think that appellant is in error in this contention. ▮ The evidence taken before the board and considered by the trial court showed the following: On December 21, 1915, a water users' organization known as "Second Extension Water Company" deeded to appellant district a large portion of appellant's present holdings of 1,444 acres, including in the grant the grantor's canals, ditches, pumping plant and appurtenances and what the deed described as "water rights." Appellant has been pumping, transporting and selling water from the lands so granted since the date of the deed. In 1943 appellant purchased additional land from which it has likewise been pumping, transporting and selling water to the lands within its boundaries. Appellant, for the lands, water rights, canals, ditches, pumping plants and appurtenances conveyed to it by the Second Extension Water Company, paid the sum of $83,000. In 1937 an action was brought by the city of Delano (situated about 11 miles east and 4 miles north of appellant's lands) and by certain other landowners by which action the plaintiffs sought to enjoin appellant district from pumping water from its lands. On September 20, 1939, a stipulated judgment was entered wherein it was determined, as far as the rights of the city of Delano, the other plaintiffs, and certain interveners were concerned, that the district could take up to 18,000 acre feet of water from its lands. Thereafter the district conformed to

that limitation. The assessor in considering the assessed water right for assessment purposes based his computations as to value upon an assumed right of the district to pump from its lands, transport therefrom and sell to owners within its district 18,000 acre feet of water per annum. We think the foregoing constituted sufficient proof before the board and before the trial court of the existence of the water right assessed. ██ An overlying owner or any other person having a legal right to ground water may take only such amount as he reasonably needs for beneficial purposes and public interest requires that there be the greatest number of beneficial uses which the supply can yield. Water may be appropriated for beneficial uses subject to those who have a lawful priority. █ Any water not needed for the reasonable beneficial uses of those having prior rights is excess or surplus water and may be appropriated on privately owned land for nonoverlying uses, such as devotion to a public use or exportation beyond the basin or watershed. █ It is the policy of the state to foster the beneficial use of water and discourage waste, and when there is a surplus the holder of prior rights may not enjoin its appropriation. █ Proper overlying use is paramount and the right of an appropriator, being limited to the amount of the surplus, must yield to that of the overlying owner in the event of a shortage, unless the appropriator has gained prescriptive rights through the taking of nonsurplus waters. █ As between appropriators the one first in time is the first in right, and a prior appropriator is entitled to all the water he needs up to the amount that he has taken in the past, before a second appropriator may take any. █ Prescriptive rights are not acquired by the taking of surplus or excess water, since no injunction may issue against the taking and the appropriator may take the surplus without giving compensation; however, both overlying owners and appropriators are entitled to the protection of the courts against any substantial infringement of their rights in water which they reasonably and beneficially need. █ Accordingly, an appropriative taking of water which is not surplus is wrongful and may ripen into a prescriptive right where the use is open and notorious, hostile and adverse to the original owner, continuous and uninterrupted for the statutory period of five years, and under claim of right. As to the exported water it is clear that the rights of appellant could not be overlying in character and must be either appropriative or

prescriptive or an aggregation of the two. The foregoing statement of rules of law relating to ground water are taken practically verbatim from *City of Pasadena* v. *City of Alhambra,* 33 Cal.2d 908, 925-927 [207 P.2d 17]. These rules constitute the prevailing law on the subject of rights in ground water in this state. When these principles are applied to the factual situation here they afford full warrant for the implied holding of the board and of the trial court that appellant district was the owner during the year of the assessment of both prescriptive and appropriative rights in the water underlying the surface of its lands. ██ Appellant made no use upon its lands of the water which it pumped therefrom, but exported and sold the whole of the water so produced. Insofar as such water was surplus, the acts of the appellant were appropriative; insofar as those acts infringed the rights of the surrounding overlying owners they were prescriptive in character. (*City of Pasadena* v. *City of Alhambra, supra.*) ██ A water right is land within the meaning of article XIII, section 1 of the Constitution and is assessable as such. (*Waterford Irr. Dist.* v. *County of Stanislaus,* 102 Cal.App.2d 839 [228 P.2d 341].) We conclude that appellant's argument that its lands have been excessively assessed cannot be sustained insofar as those arguments are based upon the assumption that there was no water right the subject of assessment and that therefore the comparison of the assessments upon its lands with those upon surrounding lands must be made without consideration of its water rights.

██ As to the value placed by the assessor upon appellant's water rights, it appeared that these values were arrived at as follows: The assessor considered the fact that the water exported by appellant, and totaling 18,000 acre feet, was being used to irrigate approximately 6,000 acres of land within the boundaries of appellant district; that the recommended price of water at the diversion point in the Central Valley Project to any irrigation district is $3.50 per acre foot, which figure the assessor took as the selling value of the water; that the cost of production to the appellant district, which cost included power for pumping, repairs to machinery, canals, ditches and the like, lubricants, rentals, plant attendance, depreciation and taxes, amounted to $2.87 per acre foot; that therefore the net value of the water per annum was 63 cents per acre foot. This net value was then capitalized. The assessor used the formula, 18,000 multiplied by .63, multiplied by 11.53 equals $130,750. The assessor took this figure as the

actual cash value of the appellant district's water rights. He then, as he did with all property in the county, reduced this figure by 50 per cent for assessment purposes, thus arriving at a value for such purposes of $63,375. The assessor testified that this method of arriving at the assessable value of the water rights was comparable to that used in assessing oil rights and gas rights. We think no proof was made by appellant that this method of arriving at the value of the water rights would not give a reasonable result. It is obvious that in assessing a water right it might be necessary to adopt a method different from that commonly used in assessing land and it cannot be said as a matter of law that there was anything invalid in the method employed by the assessor.

Appellant complains that one other agency engaged in producing, transporting and selling water from its own lands, that is, the California Water Service Company, was not by the assessor assessed for the water right used by it. The contention, even if correct, would not affect the validity of appellant's assessment since it would establish nothing more than that another taxpayer had escaped proper taxation. A showing that another taxpayer has escaped taxation affords no reason for invalidating proper assessments.

What has been heretofore said we think disposes of appellant's contentions that the assessor unlawfully made separate assessments where there were not separable interests and that the assessments made constitute double taxation. The water rights which were here assessed did not arise from mere ownership of the lands and were not a part and parcel of it. They derive from appropriation and prescription. They were the proper subject of separate assessment.

Appellant further contends that the description of parcel 6 is void for indefiniteness of description. The parcel is described as follows: "100% Int Water Rights in 100Ft Strip Approximately parallel to W line sec 2 T 26 R 23. 100Ft Strip approximately Parallel to W Line Excl of Water Rights & M.R. Sec 2 T 26 R 23." Appellant points out that there could be innumerable 100-foot strips in a section parallel to its west line. There was no showing that the appellant was confused as to the exact location of the 100 foot strip and appellant "cannot complain that the description . . . is insufficient inasmuch as it has not been misled. It unquestionably knew what property was assessed to it." (*City & County of San Francisco* v. *County of San Mateo*, 17 Cal.2d 814, 819 [112 P.2d 595].)

Finally, appellant contends that the assessments of the water rights are invalid because the rights constituted an improvement made by the appellant to its lands after their acquisition and hence could not be assessed since article XIII, section 1 of the Constitution exempts such improvement from taxation. The point is without merit and is answered by what we have heretofore said concerning the nature of the water rights which were assessed. Being the product of appropriation and prescription as against the rights of surrounding landowners whose interests they affected they are not appurtenant to nor a part or parcel of appellant's lands and consequently could not be classified as improvements thereto.

The judgment is affirmed.

Adams, P. J., and Peek, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 25, 1952.