[Civ. No. 8653. Third Dist. May 18, 1955.]

OAKDALE IRRIGATION DISTRICT et al., Petitioners, v. COUNTY OF CALAVERAS et al., Respondents.

Minasian & Minasian, P. J. Minasian, Rutherford, Jacobs, Cavalero & Dietrich, Philip Cavalero and Mark S. Bray for Petitioners.

Joseph Huberty, District Attorney, and Virgil M. Airola for Respondents.

VAN DYKE, P. J.—Petition for writ of mandate to compel the respondent county of Calaveras to cancel as null and void county taxes levied against property of petitioners for the fiscal years 1948-1949 to 1953-1954, inclusive, aggregating $65,031.23, plus penalties and interest. It is the claim of petitioners that the taxed property, jointly owned by them, is exempt from taxation imposed by the respondent county by reason of its having been included in both districts by proceedings taken to that end. It is the contention of the respondent county that these inclusion proceedings did not, for various reasons advanced by it, result in the exemption of said jointly owned property.

The facts presented in the petition for the writ have been stipulated and the matter has been submitted to the court for decision upon issues of law alone. From those stipulated facts the following appears: Petitioners are irrigation districts organized under existing California statute law. Petitioners were, as of the first Monday in March of the year 1948, and for a long time prior thereto had been, joint owners in fee simple, and in possession, of certain real property and the improvements thereon situate in the respondent county. This property consists of Melones Reservoir on the Stanislaus River, lands surrounding the reservoir, the dam, and various water rights, all of which are located approximately one-half in Calaveras County and the other half in Tuolumne County, the county line dividing said two

counties being the approximate center of the river. On December 18, 1947, the directors of the South San Joaquin district adopted a resolution "with respect to all land owned jointly by the Oakdale Irrigation District and the South San Joaquin Irrigation District and located outside of their boundaries, for the inclusion of such land within the boundaries of both the Oakdale Irrigation District and the South San Joaquin Irrigation District." On the same day the board of directors of the Oakdale Irrigation District adopted a like resolution as to the same property. It is apparent that the two districts intended by the proceedings so initiated to accomplish a result whereby as to each district all properties it owned jointly with the other district should be included within the boundaries of *both*. The South San Joaquin district proceeded without interruption to complete inclusion proceedings as prescribed by the Water Code and the proceedings terminated with appropriate orders of inclusion. The proceedings were completed prior to March 1, 1948. Like proceedings were completed by the Oakdale district, but were interrupted by a writ of mandate issued from the Supreme Court at the instance of the counties of Calaveras and Tuolumne. The court enjoined the inclusion of said lands within the Oakdale district until determination of the mandamus proceedings. On August 30, 1948 the Supreme Court discharged the writ (*County of Calaveras* v. *Oakdale Irr. Dist.*, 32 Cal.2d 890 [196 P.2d 927]) and thereafter and on September 6, 1948 the Oakdale district completed the inclusion proceedings.

A number of the legal issues discussed in the briefs of respondent have been heretofore decided by the Supreme Court in *County of Mariposa* v. *Merced Irr. Dist.*, 32 Cal.2d 467 [196 P.2d 920], in *County of Calaveras* v. *Oakdale Irr. Dist.*, *supra*, and in *County of Tuolumne* v. *Oakdale Irr. Dist.*, 32 Cal.2d 891 [196 P.2d 927].)

In the Mariposa case the Supreme Court ruled as follows: That Water Code, section 26901, as amended in 1947, authorizes the inclusion of land in an irrigation district on a petition by the "owner" of the land, regardless of whether it can be irrigated, and also authorizes a district itself to petition to include its own land within such district; that such authorization and action taken thereunder does not violate the provisions of article XIII, section 1, of the Constitution, excepting from tax exemption lands and improvements of a municipal corporation lying outside the corporate boundaries;

that article XIII, section 1, of the Constitution, as amended in 1914, does not mean that property located outside the boundaries of an irrigation district at the time of acquisition by the district continues to be taxable, after being included within the boundaries of the district; that a county does not have a vested right to tax property of irrigation districts, and that it is only an exception in the Constitution, article XIII, section 1, that makes some of such district property taxable; that the constitutional provision itself contemplates the power of an irrigation district to annex additional area and thus incidentally achieve tax exemption; that the statutes authorizing the inclusion of additional land within an irrigation district's boundaries do not unlawfully delegate power to the district directors to affect county financial affairs in violation of Constitution article XI, section 13, since the effect that such boundary change has upon taxation by the county is only one incidental result that happens to flow from the inclusion; that said statutes which permit such a district to file a petition, authorized by its own directors, for inclusion within its own boundaries of land owned by it, and also to determine the petition, are not subject to objection by the county on the ground that they violate the separation of powers doctrine, although the district is thereby granted powers to exercise both executive and judicial functions, and that the separation of powers provision of the Constitution does not apply to local governments as distinguished from departments of the state government. In connection with the foregoing, the decision in *County of Mariposa* v. *Merced Irr. Dist.*, *supra*, dealt with inclusion proceedings identical in kind and character with those with which we are here concerned, save only that the instant case presents a situation where property owned jointly by two districts is attempted to be brought within the boundaries of both districts by simultaneous action of the two districts.

In examining respondent county's contentions that even though a single district, as Merced district, could by its own petition to itself, granted by itself, include noncontiguous and nonirrigable lands owned by it within its boundaries and thus achieve exemption from county taxation, yet proceedings whereby as in this case two districts attempt to include jointly-owned properties in both are void, it is well to keep in mind that when *County of Mariposa* v. *Merced Irr. Dist.* was pending in the Supreme Court there was also pending therein the other two cases above referred to, that is, *County*

*of Calaveras* v. *Oakdale Irr. Dist.* and *County of Tuolumne* v. *Oakdale Irr. Dist. County of Mariposa* v. *Merced Irr. Dist.* was decided on August 30, 1948, and on the same day, with respect to *County of Calaveras* v. *Oakdale Irr. Dist.*, the court declared: ''This case involves the same questions presented in *County of Mariposa* v. *Merced Irr. Dist., ante,* p. 467 [32 Cal.2d 467 (196 P.2d 920)], and is controlled thereby. Therefore the petition for a peremptory writ of mandate is denied, and the alternative writ is discharged.'' The same disposition on the same date and in identical language was made of *County of Tuolumne* v. *Oakdale Irr. Dist.* In both of those cases the same inclusion proceedings which are here under attack were there attacked by respondent county.

■ One searches in vain for any practical or political reason why any distinction should be made with respect to exemption from taxation of property jointly owned by irrigation districts. The Legislature, as held by the Supreme Court in the Mariposa case, has constitutionally authorized such districts to avoid taxation by including noncontiguous and nonirrigable severally owned lands within the boundaries of the owner district. If exemption from taxation is justifiable and desirable in the one case it is equally justifiable and desirable in the other. The Constitution itself lays down the broad principle that the property of the state and of the various governmental agencies of the state ought not to be taxed. Article XIII, section 1, declares that all property in the state, except as otherwise in the Constitution provided, should be taxed in proportion to its value, but that property belonging to the state or to any county, city and county or municipal corporation (irrigation districts are municipal corporations) within the state shall be exempt from taxation. Having laid down this broad general policy exempting such state and state agency owned property from taxation, it states an exception to this general policy of exemption. Land, and land only, with improvements thereon not constructed by counties or municipal corporations, located outside the municipal boundaries, and subject to taxation when acquired, is excepted from the general policy of exempting all state owned and state agency owned property from taxation. When the Legislature, acting constitutionally, as the Supreme Court declared it did, offered an opportunity to irrigation districts to avoid taxation by including theretofore taxable property within their boundaries, it must have considered that such

avoidance of taxation was on the whole a beneficial and proper achievement. One sees no reason why jointly owned property of the districts cannot equally, and by the proceedings taken by petitioners herein, achieve the same beneficial exemption.
█ It is commonly known that such districts often, in order to perform their functions and provide water to the lands within their boundaries, must expend huge sums of money in erecting great dams upon streams flowing down from the mountains and that on many occasions such undertakings are beyond the financial ability of a single district. In recognition of this situation the Legislature, exercising its plenary power over the affairs of such districts, has provided that they may cooperate and join in the ownership and management of water projects. Section 23100 of the Water Code provides that:

"A district may make and perform any agreement with the United States, any State, county, district of any kind, public corporation, any person, or any number of them for the joint acquisition, disposition, or operation of any property of a kind which might be acquired by the district."

Section 22228 of the Water Code provides that:

"A district may contract to perform and perform any agreement with any number of persons or public corporations or agencies for the exchange, transfer, or delivery to or by either or both parties of any water right or water."

Melones Dam on the Stanislaus River and its reservoir and diverting canals and delivery system are jointly owned by the Oakdale and the South San Joaquin districts. It must be said that the Legislature could expressly provide for inclusion of jointly owned property within the boundaries of the owning districts and we think it would do violence to the purpose and the intent of the legislative enactments we have been discussing to hold that these enactments did not fairly embrace within their purpose and intent and, therefore, within their provisions, property owned jointly by irrigation districts.

Respondent county argues that the general rule laid down in *Petition of Sanitary Board East Fruitvale Sanitary Dist.*, 158 Cal. 453, 457 [111 P. 368], ought to be here applied. That rule was there stated as follows:

"It is a well-settled doctrine that 'there cannot be at the same time, within the same territory, two distinct municipal corporations exercising the same powers, jurisdiction and privileges.'"

However, the same case declared:

"These rules do not rest upon any theory of constitutional limitation. ▆ In the absence of any constitutional restriction, the Legislature has absolute power over the organization, the dissolution, the extent, the powers, and the liabilities of municipal and other public corporations established as agencies of the state for purposes of local government. (*In re Madera Irr. Dist.*, 92 Cal. 296 [28 P. 275, 675, 27 Am.St.Rep. 106, 14 L.R.A. 755].) ▆ What shall be the effect of the enlargement or diminution of the boundaries of such corporations, or of the consolidation of two into one, or of the annexation of the territory of one into another, *is a question to be answered by a determination of the legislative intent.*" (Emphasis added.)

Far from there being any constitutional limitation in respect of the simultaneous inclusion in two irrigation districts of land jointly owned by them, the Constitution has itself declared (Const. art. XI, § 13) that:

". . . The Legislature shall have power to provide for the supervision, regulation and conduct, in such manner as it may determine, of the affairs of irrigation districts . . ."

Very often land is included within the boundaries of several state agencies. ▆ Thus land within the boundaries of a city may be included within the boundaries of an irrigation district, notwithstanding both the city and the district have many of the same purposes in common. (*La Mesa Homes Co.* v. *La Mesa etc. Irr. Dist.*, 173 Cal. 121, 125 [159 P. 593] ; see also *Pixley* v. *Saunders,* 168 Cal. 152 [141 P. 815].) In *Galt County Water Dist.* v. *Evans,* 10 Cal.App.2d 116 [51 P.2d 202], it was held that the annexation by the Sacramento Municipal Utility District of the Galt County Water District did not preclude the latter district from the exercise of the power to incur a bonded indebtedness granted by the County Water District Act. The Legislature has expressly provided in section 34075 of the Water Code that lands within a water district may be included within an irrigation district; and section 34077 of the same code provides that such inclusion shall not release the included land from any of the burdens, obligations or liability of the water district; and that such lands shall in all respects continue to be a part of the water district. Indeed, it is hard to escape the conclusion, since the subject legislation was enacted shortly after the Supreme Court held in *Rock Creek Water Dist.* v. *County of Calaveras,* 29 Cal.2d 7 [172 P.2d 863], that irrigation districts

were municipal corporations and that property outside their boundaries might be taxed if taxable when acquired, that the legislation was enacted in direct response to that holding and that its main purpose was to provide a means whereby irrigation districts could place their properties under the protection of the general tax exemption provisions of article XIII, section 1, of the Constitution. As we have noted, the Supreme Court in the Mariposa case, *supra,* declared that the legislation was properly enacted and did no violence to the constitutional provisions for taxing nonincluded properties of municipal corporations. In view of these considerations, we hold that jointly owned property could be included within the owning districts by the procedure followed by petitioners in the instant case.

Respondent county contends that the lands of an irrigation district are held by and subject to a public trust for the benefit of the district's landowners and that the inclusion of the jointly owned lands within both owning districts would be the subjection of the trust property to nontrustee control; that such inclusion amounted to a partial transfer in violation of the trust. These contentions we cannot sustain. That the property of such districts is in a limited sense held in trust for the benefit of the district's landowners could not and need not be disputed; that the inclusion proceedings here taken constituted a violation of that trust does not follow. There was no conveyance or transfer of property involved. The property remained subject to the same ownership and subject to the same control and operation as had been the case before the inclusion. The properties were jointly owned, and jointly managed, for the joint benefit of the landowners in both districts, and after the inclusion proceedings that situation remained unaltered. Both before and after the inclusion the properties could only be controlled and managed by joint action and friendly cooperation of the districts. After the inclusion the same sort of control and management existed with the same limits imposed, not by reason of the inclusion, but by reason of the joint ownership.

Respondent county contends that the Water Code sections under discussion authorize inclusion of land only and that not all of the property here included was land, since the property included an appropriative water right. It is difficult to see how this point, if good, would benefit the respondent county, since if the water right did not constitute land, it would fall under the general exemption from taxation

declared in constitutional article XIII, section 1, and not within the exception to that exemption under which respondent county has taxed the water rights. However, in *Waterford Irr. Dist.* v. *County of Stanislaus*, 102 Cal.App.2d 839 [228 P.2d 341], and in *Alpaugh Irr. Dist.* v. *County of Kern*, 113 Cal.App.2d 286 [248 P.2d 117], it was held that appropriative water rights were land within the meaning of the Constitution, article XIII, section 1. A rehearing was denied by the Supreme Court in both cases. We see no reason for not now abiding by the cited decisions.

 It is also contended that in the inclusion proceedings of petitioners there was a failure to comply with the requirements of sections 30090-30092 of the Water Code and that this failure of compliance rendered the inclusion proceedings void. The sections referred to are found in that portion of the Water Code having to do with county water districts, the entire statutory plan for the organization and government of such water districts being contained in division 12 of the Water Code. Section 30090 provides that:

"The holders of title to any tract of land within any county water district may petition for the inclusion of the land and the land may be included within an irrigation district under the same conditions and in the same manner as if the land was not within the county water district."

Section 30091 provides that:

"But, the inclusion shall not be made unless it appears and the board of directors of the irrigation district within which the land is to be included finds both:

"(a) The county water district within which the land is situated has been in existence for not less than five years immediately preceding the date of the filing of the petition for inclusion with the secretary of the board of directors of the irrigation district.

"(b) On the date of the filing of the petition the county water district is not delivering and is not prepared to deliver water from the irrigation works owned by the county water district to the land for irrigation purposes."

Section 30092 provides that:

If lands be so included within an irrigation district, they shall not by such inclusion be released "from any of the burdens, obligations, or liabilities of the county water district in which it is situated because of its inclusion within an irrigation district, but shall continue to be in all respects a part of the county water district."

The jointly owned property of the petitioners consisted, as before stated, of their dam, reservoir and distributing systems; and that portion which lay on the Calaveras County side of the Stanislaus River was within the boundaries of the Calaveras County Water District at the time the properties were included within the irrigation districts. Calaveras County Water District had not been in existence for five years at the time of such inclusion proceedings and obviously the water district was not delivering and was not prepared to deliver water from any irrigation works owned by it to those properties. We say "obviously" because it would be absurd to suppose that the water district would ever contemplate delivering irrigation water to, and for the irrigation of, the dam, the reservoir and the water distributing systems which constitute the properties being included within the irrigation districts. Calaveras County Water District was permitted to intervene in these proceedings and it has joined respondent county in protesting that because of the provisions of sections 30091-30092 of the Water Code the jointly owned properties of the irrigation districts could not be included within those districts without the findings required in section 30091. A part of the taxes assessed by respondent county were assessed under appropriate provisions of law for the benefit of, and really constitute taxation by, Calaveras County Water District. They are a part of the total tax assessments which petitioners here seek to annul. We think the cited provisions of the Water Code have no application to the inclusion by petitioners of their jointly owned properties within their boundaries. To give to those code sections the meaning attributed to them by respondent county and respondent water district, not only in this case but in any other case wherein district owned property consisted of property devoted to the furnishing of water to irrigable lands, would be to declare absurdity in the legislation. We have already held that the Legislature intended by the 1947 amendments to the pertinent sections of the Irrigation District Act to permit irrigation districts to achieve tax exemption by including such properties within their boundaries. To apply the referenced sections of the Water Code to such properties would be to nullify the amendatory acts wherever nonirrigable properties owned by irrigation districts were by them sought to be included within their own boundaries. Such properties are, of course, not irrigable. If irrigable in their natural state they are taken from that classification when devoted to

the uses of distribution of water for the irrigation of other lands. It is unnecessary to give such construction to the referenced sections of the Water Code for the reason that full scope may be found for those sections without such construction. We think it clear that the intention of the Legislature in enacting those sections, as demonstrated by its amendments to the Irrigation District Act, was that the Water Code sections refer exclusively to proceedings whereby lands owned by individuals are sought to be included within an irrigation district while already within the boundaries of a water district.

■ ". . . Where the language of a statute is susceptible of two constructions, one of which, in application, will render it reasonable, fair and harmonious with its manifest purpose, and another which would be productive of absurd consequences, the former construction will be adopted." (*Uhl* v. *Badaracco,* 199 Cal. 270, 284 [248 P. 917].)

■ In this connection respondents further contend that the language of section 30092 above quoted would apply to the subject lands even though their inclusion within the irrigation districts was valid because that section states in general language that lands so included and which were within a county water district could continue to be "in all respects a part of the county water district." However, to say that this section would render the lands, even though so included, subject to further taxation by the water district, would be to fly in the face of the general exemption from all taxation declared by article XIII, section 1, of the Constitution. This further contention, therefore, is untenable.

■ We have said the Legislature could constitutionally permit irrigation districts to include within their boundaries their own properties and that in adopting amendments to the existing statutes governing inclusion proceedings the Legislature availed itself of methods contemplated by the Constitution itself, as held in *County of Mariposa* v. *Merced Irr. Dist., supra.* This brings into operation further legislative enactments, which we will now discuss. The Legislature, with its plenary power over such districts, could have added these lands to the districts by direct legislation. Further, the Legislature could have dispensed with the requirements as to irrigability and the like. (*Reclamation Dist. No. 70* v. *Birks,* 159 Cal. 233 [113 P. 170]; *Barber* v. *Galloway,* 195 Cal. 1, 6 [231 P. 34].) That being the case, the Legislature could, if there be defect in the manner in which the districts have

proceeded under the existing statutes, validate those proceedings, and this the Legislature has done, not by one act but by six acts. (See Validating Act of 1949 [Stats. 1949, ch. 781]; Validating Act of 1949 [Stats. 1949, ch. 782]; Validating Act of 1951 [Stats. 1951, ch. 675]; Validating Act of 1951 [Stats. 1951, ch. 1445; Validating Act of 1953 [Stats. 1953, ch. 1156]; Validating Act of 1953 [Stats. 1953, ch. 1886].) Generally, these validating acts all follow the same pattern and are substantially identical in wording and purpose. We quote the language used in the Validating Act of 1949 (Stats. 1949, ch. 781). After declaring that the term "public body" includes irrigation districts, the Legislature declared:

"All acts and proceedings heretofore taken by any public body under any law, or under color of any law, for the annexation or inclusion of territory into any such public body are hereby confirmed, validated, and declared legally effective. This shall include all acts and proceedings of the governing board of such public body and of any person, public officer, board or agency heretofore done or taken upon the question of the annexation or inclusion of such territory."

These acts are all applicable to the proceedings under review and as authority for the foregoing we cite *Los Angeles City Water Co.* v. *Los Angeles,* 88 F. 720, 742. From that case we quote:

"Whatever a legislature may originally authorize, it can, if the constitution under which it exists interposes no obstacle, subsequently ratify; and such ratification is equivalent to an original grant of power, operative by relation, as of the date of the thing ratified. This, according to all the authorities, is the theory and effect of a ratifying act." (See also *McKenzie* v. *Mukilteo Water Dist.,* 4 Wn.2d 103 [102 P.2d 251].)

We quote the following from *People* v. *Van Nuys Lighting Dist.,* 173 Cal. 792, 797 [162 P. 97, Ann.Cas. 1918D 255]:

"A curative act or a conclusive evidence clause in a statute is effective to cure all defects resulting from a failure to comply with provisions which are merely directory of the mode of the exercise of the power." (See 2 Cooley's Const. Lim. 8th ed. 790.)

In this case by the subject legislation the Legislature delegated to irrigation districts the power to include lands within their boundaries and directed the mode of the exercise of that power. Consequently, the Legislature, if there was a

failure to follow the mode, could by ratifying that which was done validate the inclusion proceedings notwithstanding the defects to which respondents direct their challenge.

Finally, respondents assert that these proceedings in mandate do not afford a proper and available method by which petitioners may receive the relief they ask, that is, a mandate to the board of supervisors to take appropriate action to annul these illegal taxes, which action the board has heretofore refused to take. The contention cannot be sustained. Year by year over the protest of petitioners the board of supervisors of the respondent county has levied and assessed taxes upon the exempt property of petitioners. The amounts involved are large. It affords no reason under the circumstances of this case to deny mandate because these public bodies might have paid under protest the taxes levied and then have brought suit to recover them. The petition sets forth the following matters as justifying their not having followed the method of payment under protest and suit to recover: Petitioners are state agencies formed and existing for governmental purposes; they are controlled and limited by the provisions of the Water Code with respect to borrowing money and the collection of funds with which to pay expenses and obligations; for all practical purposes they obtain their funds through levies and collection of assessment upon lands within their boundaries which are served and benefited by the delivery of water thereto. If the county taxes are illegal, as we have held they are, then petitioners ought not to be put to the burden of levying assessments for the purpose of raising money to pay the unlawful charges represented in the tax assessments and, indeed, it may be questioned whether or not they would have any authority to raise such funds. It is obvious that the involved and circuitous method of first levying taxes to pay illegal charges and then suing to recover does not afford to petitioners an adequate remedy for the wrong which the respondent county and the respondent water district have been insistently inflicting upon them. If the budget of these districts should reflect that a part of the taxes levied upon their included lands would go to pay taxes of the respondents unlawfully assessed against them, it is likely that taxpayers' suits would be brought to restrain the proposed levies for such a purpose. Without going further we think it is clear that this is a proper case for the issuance of the writ prayed for. The duty of the respondent through appropriate official action to cancel

these illegal taxes is specifically enjoined by law. (*Los Angeles* v. *County of Mono*, 108 Cal.App. 655 [292 P. 539].)

For the reasons given it is ordered that a peremptory writ of mandate as prayed for be issued.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied June 16, 1955, and respondents' petition for a hearing by the Supreme Court was denied July 13, 1955.