[Civ. No. 8392.   Fourth Dist., Div. Two.   Nov. 15, 1967.]

JURUPA DITCH COMPANY, INC., Plaintiff and Appellant, v. COUNTY OF SAN BERNARDINO, Defendant and Respondent.

Paul Barksdale d'Orr, Ernest W. Pitney and Henry H. Angell for Plaintiff and Appellant.

Stanford. D. Herlick, County Counsel, and Robert R. Walker, Deputy County Counsel, for Defendant and Respondent.

THOMPSON (Raymond), J. pro tem.* — Plaintiff is the owner of an appropriative right to take water from the Santa Ana River, which right was assessed by the defendant County of San Bernardino for the year 1961-1962 as bearing a tax of $5,866.94. Plaintiff paid under written protest. It is conceded that this water right is taxable property and the sole question is situs for the purpose of taxation. Plaintiff contends the situs is in Riverside County, and defendant claims it is in San Bernardino County. The parties agree that situs for the purpose of taxing rights to take water from streams, either appropriative or prescriptive, is the place of diversion. The problem is to determine where diversion occurs under the peculiar facts of this case.

Water is presently pumped by Riverside Water Company (Riverside Water), pursuant to plaintiff's water right and a contract between plaintiff and Riverside Water, from wells in the riverbed into a ditch, all within San Bernardino County. The water then flows in this ditch a short distance through San Bernardino County and into Riverside County. After another short distance it enters the head of plaintiff's ditch and there plaintiff measures or checks prior measurements of the water. Plaintiff's water right is in the amount of 300 inches. It returns any surplus exceeding that amount to the riverbed.

The parties stipulated that plaintiff and its predecessor have owned this appropriative right to take water from the Santa Ana River for many years. Considerably prior to 1886, the right was established by decree of the San Bernardino Superior Court in an action between plaintiff's predecessors and the predecessor of Riverside Water, an upper appropriator.[1] At the time of this decree and for many years before and after, plaintiff or its predecessors exercised the right by taking water directly out of the flowing stream.

In brief, the San Bernardino County Superior Court decree

---

*Assigned by the Chairman of the Judicial Council.

[1]Essential portions of the San Bernardino Superior Court decree of 1886.

"It Is Hereby Ordered and Decreed, that the said plaintiffs [Jurupa's predecessors] are at all time entitled to have, and do have, three hundred (300) inches of water, measured under a four-inch pressure, flow down said Santa Ana river into the mouth of their ditch for the purposes of irrigation and domestic use; that the defendants and each of them shall, at all times, suffer and be required to let sufficient water pass their canal or canals in said river to equal, together with the eighty inches rising below their said canal, the full amount of three hundred inches

of 1886 determined plaintiff's predecessors were entitled at all times, as against the predecessor of Riverside Water, to have a flow in the Santa Ana River sufficient to produce at the mouth of plaintiff's ditch 300 Southern California Miner's inches of water under four inches of pressure. At the time of this decree, Riverside County had not been organized, the territory then being wholly within San Bernardino County. The head of plaintiff's ditch was and still is located a short distance within what is now the County of Riverside, organized in 1893.

The thread of the stream of the Santa Ana River changes from time to time following periods of heavy rainfall and flood. At one time, which we infer from the record was at the inception of the taking of water by plaintiff, the stream flowed directly into the head of plaintiff's ditch in what is now Riverside County. Obviously, if this condition had continued, there would be no problem determining the point of diversion to be in Riverside County. The evidence shows, however, that at various times, and inferentially most of the time, water when taken directly from the river was diverted by placing revetments or embankments which went out into the river and directed the flow into ditches leading to the head of plaintiff's ditch. These revetments or embankments were located in San Bernardino County and the intake portions of ditches transmitting water to the head of plaintiff's ditch were located in San Bernardino County.

In 1904 plaintiff and Riverside Water entered into an agreement which, after confirming all of the rights established in favor of plaintiff by the 1886 Decree, provided that Riverside Water could deliver 300 inches of water to the head of plaintiff's ditch by pumping from the river or other practicable methods.[2] The obvious purpose of this agreement was to

of water, measured under a four-inch pressure, *at and in the mouth of plaintiffs' ditch*; that defendants and each of them, their agents and servants, or any person or persons acting for or through them, be restrained and perpetually enjoined from diverting the water of said Santa Ana river in excess of so much as will, as aforesaid, constitute and make *a continuous flow of water into plaintiffs' ditch* of three hundred inches of water measured under a four-inch pressure. . . ."

[2]Essential portions of the Agreement were:

Contract of 1904—Water Right.

"It is further expressly understood and agreed, that this contract shall *in no manner prejudice the rights of said Jurupa Ditch Company*, or the parties plaintiff to the decree hereinbefore set forth, or their successors in interest, as to any rights given or conferred upon the plaintiffs in said decree by said decree, and shall in no manner affect the

avoid an unnecessarily large flow of water continuing down the sandy riverbed with great amounts being dissipated into the underground. In order for 300 inches to reach the head of plaintiff's ditch by natural flow, approximately 600 inches would be required to compensate for the loss of water sinking into the sandy riverbed. Pursuant to the Agreement of 1904, water was sometimes delivered by pumping into ditches which ran to the head of plaintiff's ditch, and on other occasions embankments or revetments, located in the riverbed in San Bernardino County, were diverting the water to plaintiff's ditch head. The pumps at all times were, and still are, located in San Bernardino County. Since 1938, due to diminished flow in the river, all water has been pumped, as noted above, from wells into a ditch, both located within San Bernardino County.

This background material is set out in the case of *Riverside Water Co.* v. *Jurupa Ditch Co.*, 187 Cal.App.2d 538 [9 Cal. Rptr. 742]. In that action Riverside Water, having itself discontinued selling water, sought to terminate its 1904 Agreement to deliver water to plaintiff. The holding was that although under the 1886 Judgment, Riverside Water was probably not required to deliver to plaintiff, yet, by the terms of the 1904 Agreement, Riverside Water did specifically so agree, and therefore continued to be bound, to deliver plaintiff 300 inches of water at the head of its ditch in Riverside County. There was valid consideration in that Riverside

---

rights of said Jurupa Ditch Company, or the owners of said ditch, as given and conferred upon the plaintiffs by the said decree hereinbefore set forth.

Contract of 1904—Delivery of Water.

''That the party of the first part shall hereafter be permitted to *supply or furnish to the said Jurupa Ditch the 300 inches of water*, measured under a four-inch pressure, referred to in said decree, *at the head of said ditch, as provided in said decree*; but *said water, or any part thereof, notwithstanding* the terms and conditions of said decree, *may be furnished by the party of the first part by pumping such water from wells, or furnishing the same through canals, or in any other practicable way*, so that the said Jurupa Ditch shall receive the full 300 inches of water, measured under a four-inch pressure, to which the said ditch is by said decree entitled, it being understood and agreed that the amount of water so furnished shall be at all times sufficient, *when taken together with that flowing in the Santa Ana river at the head of said Jurupa Ditch*, to give and supply to the said Jurupa Ditch the full amount of 300 inches of water measured under a four-inch pressure; the object and purpose of this agreement being . . . that the said *Jurupa Ditch Company need not rely solely upon water flowing down the Santa Ana river* to supply the said Jurupa Ditch Company with the amount of water awarded to it by said decree.''

Water acquired the benefit of not being obligated to place unnecessary water flow in the riverbed sufficient to enable plaintiff's diversion of 300 inches directly from the surface.

The parties correctly concede that an appropriative right to take water from a stream is real property, is a fee simple interest and subject to taxation, and situs for purpose of taxation is the point of diversion. (*North Kern Water Storage Dist.* v. *County of Kern,* 179 Cal.App.2d 268 [3 Cal. Rptr. 636].)

The record in the case at bench discloses in the early days when water was diverted from the river into ditches flowing into plaintiff's ditch, there was a weir which measured out plaintiff's 300 inches, discharging any surplus of water back into the old riverbed. At the present time the old weir is no longer in use. Instead there is some other type of measuring device, not described in the evidence, at or near the head of plaintiff's ditch, and a facility whereby any surplus water may be returned to the riverbed. The evidence shows plaintiff uses this device to check on the amount of water being provided by Riverside Water. The old weir and the present measuring device are located in Riverside County.

Plaintiff argues there can be no diversion until, by some hydraulic means at the place of diversion, the quantity to be diverted is measured. Thus, it contends that because the old weir and the new measuring device are located in Riverside County, there has been no diversion of the water in San Bernardino County.

We feel there are several answers to this contention: first, it has been held in a number of cases not involving taxation, that diverted water may be commingled with other waters without affecting the legality of diversion. For example, in *Hildreth* v. *Montecito Creek,* 139 Cal. 22, 29 [72 P. 395], we find this language: ''Where a number of persons owning land are each entitled to take water from a common stream . . . by virtue of an appropriation . . . The owners of such water rights may make a joint diversion, and may carry the water from the point of diversion in a common conduit, . . .'' See also 1 Water for California, § 205, p. 296, and cases cited therein.

Although the legal point was not raised, a similar fact situation existed in a taxation situs case, *Waterford Irr. Dist.* v. *County of Stanislaus,* 102 Cal.App.2d 839 [228 P.2d 34]. There water produced pursuant to the water right being taxed, after being diverted, was transported in a canal owned

by two other water districts and commingled with water belonging to those districts. It is factually similar to the case at bench since plaintiff contends its water may be commingled with some surplus water after being extracted from the river, and, therefore, diversion does not occur until there is a separation. This argument could have been made in *Waterford, supra,* but was not.

The same condition existed in *North Kern Water Storage Dist.* v. *County of Kern, supra,* 179 Cal.App.2d 268. At page 271, we find: "In transit the water is commingled with other water being transported through the same canals." No mention is made of this fact as bearing on the question of the place of diversion.

Another answer to this contention is that so far as lower owners are concerned, plaintiff may be entitled to take more than 300 inches of water. The 1886 Decree and the 1904 Agreement are between plaintiff and an *upper owner,* whereby the right of plaintiff to have 300 inches of continuous flow was established. If surplus water should be coming down the stream, and plaintiff, either inadvertently or intentionally diverted more than 300 inches, there is no indication in the record that such action would be unlawful. Even assuming, and we have no basis in the record, lower owners might have a right to enjoin plaintiff from taking more than 300 inches, it does not follow that extracting of the water and putting it in a ditch for taking would not constitute a diversion.

Water flowing in a stream belongs to no one. Water is not owned until it is taken in a receptacle by the hand of man, or through works of man transferring water from the stream into some facility such as a pond, ditch, flume or pipeline. Plaintiff has a right as against upper owners to take 300 inches of water from the Santa Ana River. Plaintiff's right as against lower owners is not shown. It cannot be said that because plaintiff should happen to take into its ditch some quantity slightly in excess of 300 inches that by reason of such excess there would be no diversion of any part and the total flow so diverted in the ditch would remain ownerless, *farae naturae,* the same as if still in the natural stream.

We feel a final answer to this contention lies in the fact that presently plaintiff merely *checks* the quantity of water being received. All water now and for many years past has been pumped from wells in the riverbed. It is common knowledge that electric or otherwise powered pumps are capable of

regulation. It may be assumed Riverside Water does not waste electricity or fuel by causing its pumps to produce any consequential quantity of water in excess of 300 inches for plaintiff's facilities. Thus, we think the record shows that at the present time water is not only extracted, but is also measured, for all practical purposes, in San Bernardino County. Mr. Pitney, a witness for plaintiff, testified on this point as follows: ''Q. Since that time, since all of the water has been pumped by Riverside Water Company and turned into Jurupa's weir and ditch, how has the measuring been done? Is there still a measuring device at the weir, I will put it that way? ''A. Yes, there is. There is a meter which they have used at the weir to check on the amount of water supplied by Riverside Water Company.''

Plaintiff argues that under the 1886 Decree and the 1904 Agreement it is entitled to receive water at the mouth of its ditch, and, therefore, said point should be considered the point of diversion and the situs for taxation. Preliminarily, we note that San Bernardino County and its taxing officials were not parties to the 1886 lawsuit nor the 1904 Agreement; thus, whatever arrangements exist between Riverside Water and plaintiff are in no way binding on the taxing authorities. (*North Kern Water Storage Dist.* v. *County of Kern, supra,* 179 Cal.App.2d 268, 276.)

The 1886 Decree merely provided that plaintiff is entitled to receive, at the mouth of its ditch, 300 inches of water. This was not to fix the point of diversion, but was to make sure enough water, admittedly considerably more than 300 inches, should flow in the river so there would be available to plaintiff *at the head of its ditch* the said quantity. Even if the decree should be construed as plaintiff asserts, it would not bind the taxing authorities. The right of San Bernardino County to tax a water right having its legal existence in that county cannot be affected by an agreement or a judgment between private parties to which it was not a party.

Plaintiff argues next that the place of diversion has never been changed by it, and Riverside Water, ''an independent contractor,'' could not change it. We are not sure from the rather skimpy record whether the place of diversion *ever* was in present Riverside County. Probably at some time or times (the most logical deduction from the evidence is long before the 1886 Decree) the river flowed directly into the mouth of plaintiff's ditch in territory now part of Riverside County. But the record is fairly clear that at the time of the

1904 Agreement, and for many years prior thereto, plaintiff was diverting the stream by revetments in San Bernardino County into a ditch in San Bernardino County. Thus, we find even if the diversion ever was in present Riverside County, plaintiff itself *changed* the place thereof to San Bernardino County many years before Riverside Water became its contractor.

Further, we cannot agree that Riverside Water could not change the place of diversion. Under the contract it assumed and was given full management of plaintiff's appropriative right. Incidentally, we are sure plaintiff would be the last to assert it has lost its ancient appropriative right and now has a mere contract with Riverside Water. Under the contract of 1904, Riverside Water clearly had the right to change the place of diversion, by taking water from the river wherever it might choose.

The point of diversion may be changed by one entitled to take water from a stream according to section 1706 of the Water Code: ''The person entitled to the use of water by virtue of an appropriation other than under the Water Commission Act or this code may change the point of diversion, place of use, or purpose of use if others are not injured by such change, and may extend the ditch, flume, pipe, or aqueduct by which the diversion is made to places beyond that where the first use was made.''

We conclude the situs of plaintiff's appropriative right to take water from the Sana Ana River is in San Bernardino County.

Judgment affirmed.

McCabe, P. J., and Tamura, J., concurred.

A petition for a rehearing was denied December 8, 1967, and appellant's petition for a hearing by the Supreme Court was denied January 11, 1968.