[Civ. No. 41120. Second Dist., Div. Five. Sept. 6, 1973.]

JOHN E. MILLER et al., Plaintiffs and Appellants, v.
HAROLD J. OSTLY, as Tax Collector, etc., Defendant and Respondent.

## COUNSEL

Ludwig H. Gerber for Plaintiffs and Appellants.

John D. Maharg, County Counsel, and C. J. Moore, Deputy County Counsel, for Defendant and Respondent.

## OPINION

**HASTINGS, J.**—On December 21, 1971, John E. Miller and his wife petitioned the superior court for a writ of mandate to compel Harold J. Ostly, the Tax Collector of Los Angeles County, to honor a release of lien, which had been issued by the City of Rosemead, on real property owned by them. The petition alleges that the Millers owned a parcel of land which had been assessed for the construction of improvements made under chapter 27 of the 1911 Improvement Act in the amount of $264.33; a notice of lien had been recorded on November 28, 1969; Ostly notified the petitioners that the amount of the second half of their 1970 real property tax due the county was $319.69, of which $264.33 purportedly represented "repairs" and which was the subject of the notice of lien recorded November 28, 1969; prior to the delinquency of the second half of their 1970 taxes, petitioners presented to Ostly a photocopy of a release of lien, which released and discharged the lien for the assessment for the construc-

tion of improvements; this release of lien was acknowledged by the City of Rosemead and attested to by a notary public; petitioners, on April 10, 1971, presented to Ostly a $55.36 check for the remaining balance in full (less the Rosemead assessment) on the second installment of the 1970 taxes; and Ostly returned the check uncashed and sold the property to the State of California on June 30, 1971, for delinquent taxes, based upon the alleged nonpayment of the second half of the 1970 property taxes. They further alleged that Ostly refused their request: (1) to acknowledge that all the real property taxes on said property for the year 1970 have been paid in full; (2) to cancel the purported tax sale of said property; and (3) to amend his records as Tax Collector of Los Angeles County to show that all 1970 property taxes on the property have been paid in full as of the date when payment was tendered, April 10, 1971; and that mandamus is the only adequate remedy to compel him to do the aforementioned requests.

After an alternative writ of mandate had been issued, respondent Ostly filed an answer[1] alleging that the City of Rosemead recorded the notice of lien against petitioners' property; when the assessment was not paid, the City of Rosemead delivered the notice of lien to respondent tax collector, who then entered the assessment on the county tax roll pursuant to Streets and Highways Code section 5893; since any assessment placed on county tax rolls becomes a first lien on the property of equal dignity with other taxes and assessments levied against the parcel (Rev. & Tax. Code, § § 2187, 3900; Sts. & Hy. Code, § 5894), it had been the practice of the City of Rosemead, when the unpaid assessment was forwarded to respondent county tax collector, to record a release of lien; and the form for this release erroneously acknowledged payment in full, even though no payment had been made in the subject assessment. As an affirmative defense, respondent alleged that mandamus was not the proper remedy, since petitioners have an adequate remedy at law.

Attached to the answer as an exhibit was a memorandum from Roy H. Heitzman, chief of the real estate division of the office of the county treasurer and tax collector, to D. W. Clinton, deputy county counsel, stating, inter alia:

"We received payment of the first installment for $319.71 or one half of the total taxes. Subsequently, Mr. Miller tendered a payment of $55.36 for the second installment, deducting the entire Rosemead Repair Charge

---

[1]There is no merit to petitioners' contention that respondent's answer was inadmissible because it was not verified. Code of Civil Procedure section 446 states that "if . . . any county . . . or an officer of such . . . county, . . . in his official capacity is defendant, its or his answer need not be verified."

of $264.33. This check was returned to Mr. Miller with an explanation that the correct amount needed to pay the second installment was $319.69. Mr. Miller again sent in the check for $55.36 claiming the repair charge was invalid and that he had a Release of Lien from the City of Rosemead. We again returned his check with a further explanation that we had contacted Mr. Street, Assistant City Manager of the City of Rosemead, and he assured us again that it was a valid charge, and that *no payment had ever been received by the City of Rosemead.*

"We also notified Mr. Miller that if he could present proof of payment or a cancelled check, we could pursue the matter further, . . ." (Italics added.)

This case is so lacking in merit that we are forced to conclude that petitioners are "playing a game with the court."

To begin with, petitioners do not allege payment of the tax in their petition, instead they pleaded "petitioners presented to Ostly a photocopy of a release of lien, which released and discharged the lien for the assessment. . . ." This alone would not be damaging because pleadings are often technical. However, when considered with the other facts it becomes apparent that petitioners are not acting in good faith.

In opposition to the petition, there is attached to the answer as an exhibit the aforementioned memorandum of the chief of the real estate division of the office of the county treasurer and tax collector which, paraphrased, stated among other things that the Assistant City Manager of the City of Rosemead had assured him [Ostly] that the charge was valid and no payment had ever been received by the City of Rosemead; that they also notified Mr. Miller to present proof of payment and they could pursue the matter further. Petitioners did not respond to this letter.

But let us continue. At the hearing on the petition, the facts became clearer. The following colloquies occurred: "THE COURT: It appears from your petition that the amount of that assessment was not paid. MR. MILLER: Well, not prior to the time it went on to the tax bill, your Honor. Our position is that—THE COURT: Or thereafter. MR. MILLER: Our position is that it is paid. THE COURT: Your position is that when the City of Rosemead gave you a release of lien which was recorded, which the City of Rosemead acknowledged payment in full that that discharged the lien and also your liability to pay, is that—

"MR. MILLER: I think that that latter question—you see, your Honor, that is the situation that kind of involves us here this morning and shouldn't really, if I may be permitted to say so. In fact if an order to—in order to expedite things here because it wouldn't make any differences—we have

got a situation here relatively, say, of two counts, payments or release of record, and so far we have got to keep in mind we're not talking about the City of Rosemead. We're talking about the County Tax Collector. What was his authority? What is his authority? We're talking about the things he did.

"Now, therefore, in order to expedite things, I am perfectly willing to submit the question of payment and let's go to the question of pure un-adulterated law. That is the release of record on which we have no traverse no matter what this document is. We have nothing here— . . ."

Before the next discussion between Mr. Miller and the court on this point, Mr. Clinton, deputy county counsel representing Ostly, made several pertinent comments, among them: "MR. CLINTON: My feeling, your Honor, that there is no allegation of payment. There is an allegation of a release of lien which would be proof of payment, but not the allegation of payment itself. . . . I have perhaps in a certain sense an unconscionable number of witnesses in the room this morning and was prepared to prove all of the things that are set forth in the answer. . . ."

When the court and Mr. Clinton finished, Mr. Miller again addressed the court: "MR. MILLER: If your Honor please the—we have anticipated the payment matter has overshadowed everything else. But I still, as I said in the beginning, believe that can be side-stepped as far as this proceeding is concerned, and let's consider the disjunctive and handle it as a point of law. I want to meet the payment issue where the payment issue should. I want to come to court prepared not to just cross-examine. I want it to carry the issue. I don't believe this is the court to do it at this time in this place because there would be a lot more witnesses than are here now. . . ."

Petitioners' answers were evasive as to payment. They have never, at any stage of the proceedings, rebutted the allegation of nonpayment or explained why they did not accept the county tax collector's request to "present proof of payment." It is obvious that petitioners' contention was that they did not have to answer the question of payment because the release of lien document spoke for itself.[2]

We are convinced from the record that petitioners had not paid the tax at the time of the hearing on their petition for a writ of mandamus. But

---

[2]The climax of this "game" occurred at oral argument on appeal before this court. Counsel for petitioners stated he was told Mrs. Miller had paid the tax. Nothing further was offered in the way of proof. Counsel was then asked by this court, "If you produce it (proof of payment), I think the county counsel would accept it and terminate this whole ridiculous thing. . . ." Counsel responded as follows: "But, your Honor, would you not agree with me, viewing it very objectively, Mr. Miller coming into court with a release issued by an authorized representative of the city that the burden then shifts to the city?"

if we are in error and petitioners did pay the tax, they are in an untenable position and, as such, are not entitled to the sympathy of this court. The administrative functions of our taxing agencies are heavily burdened. The heavy case loads of our courts are well known to the public. Yet, when requested by the tax collector to produce proof of payment so that this matter could be settled, petitioners did not respond, nor did they answer the trial court's direct questions regarding payment of the tax or this court's questions (*supra*) with candor. It is obvious that this matter could have been resolved by forthrightness on petitioners' part. The courts do not have time for "shadow boxing" with litigants when the problem can easily be resolved without litigation.

At this point we pause to explain how petitioners received a release of lien, where no payment was made. The record indicates that it was issued by the City of Rosemead, either under a mistake of fact or a mistake of law. Section 5893 of the Streets and Highways Code provides that city taxes may be collected by county officials if the notice of lien is delivered to the county auditor. It had been the practice of the City of Rosemead, when forwarding unpaid assessments to respondent county tax collector, to record a release of lien on behalf of the City of Rosemead. The form erroneously acknowledged payment in full.

We do not condone the City of Rosemead's mistake; however, we cannot applaud petitioners' action in seeking to take advantage of it.

We do not rule on the propriety of a writ of mandamus if petitioners had paid the tax. ■ However, the writ will not issue to compel a discretionary act (*Faulkner* v. *Cal. Toll Bridge Authority,* 40 Cal.2d 317, 326 [253 P.2d 659]), or where an adequate remedy exists at law (Code Civ. Proc., § 1086).

■ Under the circumstances set forth in the present case, petitioners have an adequate remedy at law; thus, a writ of mandamus is improper. Under Revenue and Taxation Code sections 5136 and 5141, a tax may be paid under protest and a suit may then be commenced to recover said tax plus interest thereon. In *Sherman* v. *Quinn,* 31 Cal.2d 661 [192 P.2d 17], a property owner and his wife sought a writ of mandamus to compel a county assessor to assess to them real property being purchased by them under a conditional sale contract in order that he might claim his veteran exemption. The court, in denying the writ, stated at page 665 that ". . . an adequate procedure is provided by statute whereby taxes erroneously levied and collected may be refunded, together with interest thereon, upon a claim therefor. (See Rev. & Tax. Code, § 5096. et seq.) This form of procedure, widely used in the tax field, is based upon the principle that 'delay in the proceedings of the officers, upon whom the

duty is devolved of collecting the taxes, may derange the operations of government, and thereby cause serious detriment to the public.' [Citation.] . . . 'The prompt payment of taxes is always important to the public welfare. It may be vital to the existence of a government.' "

In *Jillson* v. *Board of Supervisors*, 221 Cal.App.2d 192 [34 Cal.Rptr. 419], a case wherein petitioner sought by mandamus to compel the county board of supervisors to reduce the assessment on her property, the court held that a writ of mandamus is improper where petitioner has the right to pay under protest and sue for recovery thereon.

Petitioners should have paid the tax. If they sincerely believed they were entitled to a refund based on the recorded release of lien, this could have been appropriately litigated.

Petitioners rely heavily in their argument upon the reasoning set forth in *Lockhart* v. *Wolden*, 17 Cal.2d 628 [111 P.2d 319]. However, this case, and the earlier cases which issued writs of mandate to set aside invalid assessments without considering the adequacy of the remedies provided in the Revenue and Taxation Code, were generally based on the proposition that the petitioner or taxpayer could not in such cases recover interest. This remedy is now provided by Revenue and Taxation Code section 5105, and arguments based on *Lockhart* were rejected in *Sherman* v. *Quinn, supra*. As pointed out in *Jillson* v. *Board 'of Supervisors, supra*, at page 195, " 'It has been the trend of the Court in recent cases to relegate the taxpayer to the statutory remedy and to deny mandate. [Citations.]' "

Since mandate is not available to petitioners, no other points raised require discussion except their request for $1,500 attorney's fees. ■ The meritless position of petitioners should have been apparent to any lawyer, and to seek fees over five times the unjust claim is unconscionable. Attorney's fees are denied and costs are awarded to respondent.

The judgment is affirmed.

Stephens, Acting P. J., and Ashby, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 31, 1973.