[Civ. No. 46434. Second Dist., Div. One. Jan. 29, 1976.]

FAIX, LTD., Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES, Defendant and Respondent.

[redacted]

## COUNSEL

Frederick R. Schumacher for Plaintiff and Appellant.

John H. Larson, County Counsel, and Lawrence B. Launer, Deputy County Counsel, for Defendant and Respondent.

## OPINION

## HANSON, J.—

### INTRODUCTION

Plaintiff Faix, Ltd. (hereinafter plaintiff or Faix) appeals from the granting of a motion for judgment on the pleadings in three consolidated tax actions made by defendant County of Los Angeles (hereinafter defendant or County). The dispute involves taxes pertaining to the valuation assessed on certain Upper San Gabriel River Basin water rights.

### BACKGROUND

Plaintiff Faix owns what previously was known as the Pellissier Ranch, comprised of about 1,200 acres located in the San Gabriel basin. On January 2, 1968, an action (No. 924128) was commenced in the Los Angeles Superior Court by the Upper San Gabriel Valley Water District

against several defendants, among whom were plaintiff Faix and defendant County. The answer of Faix in that action alleges, among other things, that Faix for more than five years prior to filing of the action "pumped and produced water from the basin in a manner and form which has been, and is, continuously open, notorious, adverse and hostile to plaintiff [Water District] and each other defendant herein" and that Faix as a direct proximate result "claims riparian, overlying, appropriative and prescriptive rights" in and to said water. Judgment in action No. 924128 was entered January 4, 1973, whereby Faix was allocated 6,490 acre feet of the mutual prescriptive rights in the water.

## THE PLEADINGS

The three consolidated actions in the case at bench concern taxes for three consecutive fiscal years: 1970-1971 (No. C 4062); 1971-1972 (No. C 32878); and 1972-1973 (No. C 51630). Actions C 32878 and C 51630 are each entitled "Complaint for Refund of Real Property Taxes" and each contains two counts. The complaint in action C 4062 is entitled "Amended and Supplemental Complaint for Refund of Real Property Taxes, and for Declaratory Relief" and contains three counts. (For the sake of brevity these pleadings collectively will hereinafter be referred to as the "complaints.")

Although difficult to ascertain with certainty, it seems that the first count of plaintiff's three complaints is based on the claim that plaintiff's interest in the water rights was a nontaxable interest. Concerning the particular fiscal year involved, plaintiff alleged in essence: that the rolls of the county assessor set forth as taxable to plaintiff the water rights; that the assessor's total cash value exceeded $1 million with a total assessed value of 25 percent of such cash values; that actually the full cash value and assessed value amounted to "zero"; that the overassessment resulted in an excessive levy of $40,398.57 taxes (action C 4062)[1] "by reason of the fact that plaintiff did not and does not own a taxable interest in said real property."

The first count also alleges: The assessments were void, illegal and unconstitutional and in violation of the equal protection clauses in both state and federal Constitutions; that plaintiff paid the first installment (one-half) of the taxes to the tax collector (action C 4062—March 31, 1971; action C 38278—April 10, 1972; and action C 51630—December 1,

---

[1] The taxes levied in action C 38278 were $30,137.12; the taxes levied in action C 51630 were $28,028.50.

1972) under protest; that plaintiff "has no administrative remedies available to it for review of taxes assessed and collected on property in which it owns no taxable interest" and is entitled to court determination; that, on information and belief, the said first installment of taxes was collected illegally and plaintiff is entitled to the sum paid (action C 4062—$21,411.23; action C 38278—$15,972.98; and action C 51630—$14,684.10) with interest; that no refund of said taxes or of any part thereof has been made.

The second count of plaintiff's complaints proceeds on the basis of denial by the assessment appeals board of plaintiff's application for reduction in the assessed value of the water rights and payment under protest by plaintiff of the first installment of the taxes.[2] Among other things count two alleges: that plaintiff paid under written protest the first installment of taxes assessed on the property (water rights); that plaintiff filed with the assessment appeals board "a verified petition for reduction in assessment pursuant to the provisions of Revenue and Taxation Code, Sec. 1607" which petition was heard and denied by said board; that the appraisal and the fixing of the full cash value and the assessed value of the property interests by the assessor and by the assessment appeals board "was arbitrary, erroneous, invalid, unfair, unlawful, not based on the evidence presented, not based upon sufficient evidence, not based upon the weight of the evidence as required by law for the following reasons:" (a) that no taxable interest was owned; (b) that plaintiff's interest, if any, was too indefinite to be ascertainable;[3] (c) that the assessment violated state and federal equal protection clauses; and (d) that the assessment constituted double taxation.

[2] In regard to the fiscal years 1970-1971 and 1971-1972, plaintiff alleges that plaintiff applied to the board for reduction; that the board heard and denied the application; and that thereafter plaintiff paid the first installment of taxes under protest. In regard to the fiscal year 1972-1973, the sequence is alleged to have been: application to the board for reduction; payment by plaintiff under protest of the first installment of taxes; and some two months later the board heard and denied the application for reduction. As to the result in the present appeal, this difference in sequence is not material, but no determination is intended to be made that the difference would not be material in some other factual situation.

[3] In action C 4062, the amended and supplemental complaint contains additional matter which alleges: "(b) Plaintiff's interest, if any, in real property is too indefinite to be ascertainable; further, there is a disparity in the amount of water rights allegedly owned by plaintiff, as determined by the tax collector in the amount of 8,835 acre feet as opposed to the water rights allegedly owned by plaintiff, as determined by independent consulting engineers in the amount of 4870 acre feet." We elect to treat these allegations as not determinative although in *El Tejon Cattle Co.* v. *County of San Diego*, 252 Cal.App.2d 449 [60 Cal.Rptr. 586], where plaintiff claimed entitled to money paid as taxes since, instead of 3,000 cows, taxpayer had but 1,825 cows; it was claimed that taxpayer thus paid taxes on nonexisting property of 1,175 cows. The appellate court held

It is conceded by plaintiff on appeal that, although paying the first installment under protest, Faix never made any payment of the second installment for any of the fiscal years with which this appeal is concerned.

The third count, which plaintiff Faix asserts seeks declaratory relief, was added as a supplemental count by plaintiff to action C 4062. This third count concerned fiscal year 1971-1972 which is the same fiscal year involved in action C 38278. No other purported declaratory relief or third count appears. The allegations of the third count of the supplemental complaint in action C 4062 are practically duplicative of the allegations of the second count of the complaint in action C 38278 except for a request for declaratory relief.

## Discussion

Defendant County's motion for judgment on the pleadings appears to have been made on the grounds that (1) each cause of action in the respective complaints failed to state facts sufficient to state a cause of action; (2) the court lacked jurisdiction to grant the relief requested by plaintiff; and (3) plaintiff was precluded from maintaining any action for refund of taxes because it assertedly failed to follow the procedures set forth in Revenue and Taxation Code section 5096 et seq. and section 5136 et seq.

■ The motion "had the purpose and effect of a general demurrer [citation] and on review is to be tested by the same rules. [Citations.] Since the motion was used to perform the function of a general demurrer, it 'reaches only to the contents of the pleading and such matters as may be considered under the doctrine of judicial notice'

---

that this was if anything an error in the amount of property subject to taxation—which was for determination by the administrative board of equalization; and, since the taxpayer did not proceed to secure determination by that body, the taxpayer could not seek relief in the courts inasmuch as the taxpayer had failed to exhaust administrative remedies.

The case was cited with approval, among other cases, in *Stenocord Corp.* v. *City etc. of San Francisco*, 2 Cal.3d 984, 990 [88 Cal.Rptr. 166, 471 P.2d 966] (where taxpayer had not exhausted administrative remedies but contended the filing of a claim for refund met that requirement), as supportive of the principle that, "a claim for refund is an adequate substitute for a request for equalization only in those cases wherein the assessment is totally void as an attempt to tax property not subject to taxation, rather than merely an inaccurate assessment of the value of taxable property. [Citations.]"

The record on appeal reflects that Faix did seek relief by application to the assessment appeals board.

[citation] and 'admits all material and issuable facts pleaded.' [Citation.]" (*Colberg, Inc.* v. *State of California* ex rel. *Dept. Pub. Wks.*, 67 Cal.2d 408, 411-412 [62 Cal.Rptr. 401, 432 P.2d 3], cited and followed in *Kachig* v. *Boothe,* 22 Cal.App.3d 626, 630 [99 Cal.Rptr. 393]; see also *Sullivan* v. *County of Los Angeles,* 12 Cal.3d 710, 714, fn. 3 [117 Cal.Rptr. 241, 527 P.2d 865].)

## COUNT I

◼ The first count of plaintiff's complaints alleges that plaintiff's interest in the taxed water rights was a nontaxable interest.

◼ It is established that "in the consideration of a pleading the courts must read the same as if it contained a statement of all matters of which they are required to take *judicial notice,* even when the pleading contains an express allegation to the contrary." (Italics added.) (*Chavez* v. *Times-Mirror Co.,* 185 Cal. 20, 23 [195 P. 666], cited in *Martinez* v. *Socoma Companies, Inc.,* 11 Cal.3d 394, 399 [113 Cal.Rptr. 585, 521 P.2d 841].) The rule applies to a motion for judgment on the pleadings. (See *Kachig* v. *Boothe, supra,* 22 Cal.App.3d at p. 630.)

◼ In the case at bench, both parties concede that in passing upon the motion for judgment on the pleadings the trial court took judicial notice of action No. 924128 (referred to under Background, *ante*), which reflects that plaintiff Faix at all times pertinent to the instant case has claimed an interest in the water rights including prescriptive rights thereto and that the ultimate judgment for that action (No. 924128) upheld plaintiff's claim to a proportionate share of mutual prescriptive rights therein.[4]

Since appropriative or prescriptive water rights are properly assessed and taxed separately (see, e.g., *Alpaugh Irr. Dist.* v. *County of Kern,* 113

---

[1]Neither party to this action has raised the question of the correctness of action No. 924128 relative to the requirement of Faix to prove that it paid taxes, levied and assessed, on the prescriptive rights for the years required to establish a prescriptive right pursuant to Code of Civil Procedure, section 325. However, the question is moot because the judgment in action No. 924128 appears to have become final. Moreover, "[t]he requirement of the payment of taxes in order to secure a right by prescription does not apply where no taxes have been levied or assessed. [Citations.]" (*Costa* v. *Fawcett,* 202 Cal.App.2d 695, 701 [5] [21 Cal.Rptr. 143].) In *Heilbron* v. *Water Ditch Co.,* 75 Cal. 117, 123 [17 P. 65], it was said: "The point that respondents are not found to 'have paid all the taxes, state, county, or municipal, which have been levied and assessed upon said land' (sec. 325 Code Civ. Proc.), is sufficiently answered by the fact that it does not appear that any taxes were ever levied or assessed upon the ditch and water right in question to defendant, or to any person or persons known or unknown."

Cal.App.2d 286, 293, 294 [248 P.2d 117]; *North Kern Water Storage Dist. v. County of Kern,* 179 Cal.App.2d 268, 279 [3 Cal.Rptr. 636], and authorities cited; *Jurupa Ditch Co.* v. *County of San Bernardino,* 256 Cal.App.2d 35, 40 [63 Cal.Rptr. 764]), differing from riparian· or overlying water rights, and a separate assessment and taxation of appropriative or prescriptive rights is not double taxation, and since it cannot be said that none of plaintiff's water rights was taxable, we hold there was no error in granting the motion for judgment on the pleadings insofar as plaintiff's first count of the complaints is concerned.[5]

## COUNT II

■ In directing our attention to the second count, we assume that it states facts sufficient to constitute a cause of action for refund of taxes (see *McHugh* v. *County of Santa Cruz,* 33 Cal.App.3d 533, 544 [109 Cal.Rptr. 149]) unless the failure to pay the second installment of taxes renders this count deficient.

In citing *McHugh,* plaintiff Faix urges that it need not have paid any tax installment, much less the second installment, in order to maintain an action against defendant County (particularly in regard to its third count for declaratory relief set forth in action· C 4062). The appellate court stressed in *McHugh, supra,* 33 Cal.App.3d at page 543, that plaintiff had alleged payment of "the full amount of the taxes for the fiscal year 1966-1967, including penalties for delinquent payment." In *McHugh,* as to the fiscal year 1966-1967, plaintiff McHugh had exhausted administrative remedies, had paid part of the taxes and after delinquency had then paid the required amount (penalties, interest, etc.) to effect redemption—all payments being under protest; and it was held that his action for recovery of taxes paid under protest was begun timely as the statutory period was held to commence running from the payment of the delinquent payment under protest. (33 Cal.App.3d at p. 540.) Since McHugh had failed to exhaust his administrative remedies for other fiscal tax years, it was held he could not seek court relief as to these other fiscal years.

---

[5]Plaintiff Faix suggests, if it does not urge, that these prescriptive rights cannot be taxable interests unless and until there be a court determination establishing them. However, the file reflects that plaintiff claimed (and proved in support of the judgment in action No. 924128) to have held these rights openly, notoriously, adversely and hostile to others during the various years involved and that they actually existed prior to and during the fiscal years involved in the tax assessments at bench. Thus, since plaintiff Faix has so claimed and had and was enjoying these rights over a period of many years, it is estopped from validly asserting this argument. It cannot have its cake and eat it too.

In the case at bench, neither side has cited any statutory enactment which in terms permitted, for the fiscal years here involved, a payment of but part of the taxes as a basis for a suit for refund. As hereafter noted in footnote 7, the applicable statute (Rev. & Tax. Code, § 5136) requires, at least impliedly, payment of the whole, not merely part, of the taxes. Our own research has failed to reveal any statute which permitted payment under protest of the first installment, without payment of the second installment, as a basis for a suit for refund. The first and only statutory enactment, making any provision in this regard, appears to have been made by the addition of section 5136.5 to the Revenue and Taxation Code which became effective March 7, 1973, and was adopted by Statutes 1972, chapter 584, section 1, pages 1027-1028, but which does not appear applicable here since the requirements set forth in section 5136.5 do not appear present and furthermore the final section of the statute (Stats. 1972, ch. 584, § 3, pp. 1028-1029) appears to render that statute inapplicable.[6]

---

[6]Statutes 1972, chapter 584, pages 1027-1029, filed with the Secretary of State August 8, 1972, and effective March 7, 1973, states:

"*The people of the State of California do enact as follows:*

"SECTION 1. Section 5136.5 is added to the Revenue and Taxation Code, to read:

"5136.5. (a) Notwithstanding the fact that all taxes on property have not been paid in full, the owner of such property may bring an action under Section 5138 at any time within six months after the payment under protest of the first installment under an installment plan of redemption pursuant to Article 2 (commencing with Section 4216) of Chapter 3 of Part 7 of this division, if the following requirements are satisfied:

"(1) The first installment payment is made within six months of the delinquency of the taxes being paid by installments.

"(2) If the balance of the unpaid tax liability remaining after the first installment payment has been made, plus penalties and interest thereon to the date of filing the actions, exceeds 66⅔ percent of the full cash value of the property on which the taxes are a lien, as of the last equalized assessment roll, the taxpayer shall post a bond with the county tax collector in a sum equal to such excess or, in the alternative, pledge other property with the county tax collector in such amount as security. The requirement for a bond or additional security specified in this paragraph shall terminate when the balance of unpaid tax liability remaining after a subsequent installment payment, plus penalties and interest thereon to the date of such subsequent installment payment, no longer exceeds 66⅔ percent of the full cash value of the property on which the taxes are a lien, as of the last equalized assessment roll. However, a new bond shall be posted or property pledged if, during the pendency of the action, the balance of unpaid tax liability, plus penalties and interest thereon, again exceeds 66⅔ percent of such full cash value.

"(b) The right to maintain an action under this section shall terminate if there is a default of any obligation by the owner in the installment plan of redemption on the property.

"(c) If the owner does not recover the amount of taxes in dispute in an action brought under this section, he shall pay additional interest to the county or city equal to the difference between the interest he has paid under Article 2 (commencing with Section 4216) of Chapter 3 of Part 7 of this division and the amount of interest the county or city would have earned on the funds in the impound account on the entire amount of tax

Although apparently made in connection with the third count, but discussed here under the second count, plaintiff Faix suggests that payment of the second installments might be made in the future and other steps if needed be taken with the result of placing itself in the taxpayer's position presented in *McHugh, supra.* If and whether some future steps may be taken by plaintiff which could present a different factual picture resulting in different rights is clearly a hypothetical matter upon which we express no opinion. We are bound by the record on appeal.

Plaintiff Faix's· contention that partial payment (here, of the first installment) suffices, with no payment of the balance of the taxes is fundamentally contrary to the precepts and principles enunciated by the California Supreme Court. In *Sherman* v. *Quinn,* 31 Cal.2d 661 [192 P.2d 17], plaintiff Sherman had been denied a veteran's exemption to which he was entitled. He sought mandamus to compel its allowance. In affirming the judgment denying the writ, it was held (p. 665): "However, should an assessor deny the exemption to a veteran, an adequate procedure is provided by statute whereby taxes erroneously levied and collected may be refunded, together with interest thereon, upon a claim therefor. (See Rev. & Tax. Code, § 5096 et seq.) This form of procedure, widely used in the tax field, is based upon the principle that 'delay in the proceedings of the officers, upon whom the duty is devolved of collecting the taxes, may derange the operations of government, and thereby cause serious detriment to the public.' (*Dows* v. *City of Chicago,* 11 Wall. 108,

determined by the court to be due. if such amount had been paid in equal installments on the tax delinquency dates.

"SEC. 2. Section 5136.6 is added to the Revenue and Taxation Code. to read:

"5136.6. In all proceedings brought to recover taxes pursuant to Section 5138. whether or not such proceedings are brought by an installment taxpayer under an installment plan of redemption pursuant to Article 2 (commencing with Section 4216) of Chapter 3 of Part 7 of this division or pursuant to Section 5136.5. all courts wherein such actions are or hereafter may be pending shall give such actions precedence over all other civil actions therein. except actions to which special precedence is given by law. in the matter of setting same for hearing or trial. and in hearing the same. to the end that all such actions shall be quickly heard and determined.

"SEC. 3. Notwithstanding the provisions of subdivision (a) of Section 5136.5 of the Revenue and Taxation Code. with respect to property taxes delinquent on the effective date of this act. the provisions of such section and Section 5136.6 shall apply only if an installment plan of redemption pursuant to Article 2 (commencing with Section 4216) of Chapter 3 of Part 7 of Division 1 of such code existed on the effective date of this act. a timely application had been filed for a reduction of the assessment on which the taxes are being paid in installments. and an action to recover taxes paid under protest is commenced not later than six months after such effective date. This section is not intended to extend the time for filing an application for reduction of assessments pursuant to Sections 1607 and 1760 of such code."

110 [20 L.Ed. 65].) . . . . 'The prompt payment of taxes is always important to the public welfare. It may be vital to the existence of a government. The idea that every tax-payer is entitled to the delays of litigation is unreason.' *(Springer* v. *United States,* 102 U.S. 586, 594 [26 L.Ed. 253]; cited with approval in *People* v. *Skinner,* 18 Cal.2d 349, 355 [115 P.2d 488, 149 A.L.R. 299].)" (See also *Jillson* v. *Board of Supervisors,* 221 Cal.App.2d 192, 195 [34 Cal.Rptr. 419]; *Tivens* v. *Assessment Appeals Bd.,* 31 Cal.App.3d 945, 947 [3] [107 Cal.Rptr. 679]; *Miller* v. *Ostly,* 34 Cal.App.3d 190, 195-196 [109 Cal.Rptr. 714]; *Kahn* v. *East Bay Mun. Util. Dist.,* 41 Cal.App.3d 397, 406 [116 Cal.Rptr. 333].)

In *People* v. *Skinner,* 18 Cal.2d 349, 355 [115 P.2d 488, 149 A.L.R. 299], the California Supreme Court had rendered an opinion, had granted a rehearing, and after reconsideration approved and adopted its former opinion. On pages 356 and 357, the court stated: " 'In the discussion of the general subject of the system of enforcing the government's claims for taxes, the court said in *Bull* v. *United States,* 295 U.S. 247, 259 [55 Sup.Ct. 695, 79 L.Ed. 1421]: "A tax is an exaction by the sovereign, and necessarily the sovereign has an enforcible claim against every one within the taxable class for the amount lawfully due from him. The statute prescribes the rule of taxation. Some machinery must be provided for applying the rule to the facts in each taxpayer's case, in order to ascertain the amount due. . . . But taxes are the life-blood of government, and their prompt and certain availability an imperious need. Time out of mind, therefore, the sovereign has resorted to more drastic means of collection. . . .

" ' "In recognition of the fact that erroneous determinations and assessments will inevitably occur, the statutes, in a spirit of fairness, invariably afford the taxpayer an opportunity at some stage to have mistakes rectified. Often an administrative hearing is afforded before the assessment becomes final; or administrative machinery is provided whereby an erroneous collection may be refunded; in some instances both administrative relief and redress in an action against the sovereign in one of its courts are permitted methods of restitution of excessive or illegal exaction. Thus the usual procedure for the recovery of debts is reversed in the field of taxation. Payment precedes defense, and the burden of proof, normally on the claimant, is shifted to the taxpayer. The assessment supersedes the pleading, proof and judgment necessary in an action at law, and has the force of such a judgment. The ordinary defendant stands in judgment only after a hearing. The taxpayer often is

afforded his hearing after judgment and after payment, and his only redress for unjust administrative action is the right to claim restitution."

" 'The courts of this state have given full recognition to the foregoing precepts. . . .' " (See also *People* v. *Sonleitner,* 185 Cal.App.2d 350, 357, 359-360 [8 Cal.Rptr. 528].)

Accordingly, we hold that there was no error in granting the motion for judgment on the pleadings insofar as plaintiff's second count of the complaints is concerned.[7]

## Count III

For reasons expressed in disposing of plaintiff's second count, it follows that plaintiff's third count cannot be maintained. To permit plaintiff to seek declaratory relief in face of the allegation that it had paid only the first half of taxes would be contrary to the rationale of the decisions as heretofore shown in discussion of plaintiff's second count. Plaintiff has not yet paid the taxes and has not met the requirements for accrual of a cause of action under the statutory scheme provided by the

[7]Neither party has cited *Schaffer* v. *State Board of Equalization,* 109 Cal.App.2d 574 [241 P.2d 46], which at first blush may seem in conflict with our holding. No hearing by the Supreme Court was sought in *Schaffer* which has never been cited subsequently in any California decision. *Schaffer* involved the sales and use tax law concerning which special and different provisions have been made governing overpayments and refunds. (Rev. & Tax. Code, div. 2, pt. 1, ch. 7, § 6901 et seq.) In regard to property taxes such as involved in the case at bench, there are two procedures provided by the statute: claim for refund of taxes paid (Rev. & Tax. Code, §§ 5096-5107) and payment of taxes under protest (Rev. & Tax. Code, §§ 5136-5143). Real property taxes are payable November 1st but the taxpayer is given the right or option to pay in two installments, the first half of the taxes becoming delinquent if not paid December 10th and the second half if not paid April 10th. (Rev. & Tax. Code, §§ 2607, 2617, 2618 and 2619.) To pay the first half of taxes obviously is not equivalent to payment of the taxes on the property which are payable. Revenue and Taxation Code section 5136 commences: "After taxes are payable, any property owner may pay the taxes on his property under protest." Plaintiff Faix has not paid the taxes on the property but only the first installment. *Schaffer* did not involve such a procedure. Additionally, the instant appeal is controlled by the rationale of the decisions rendered by the California Supreme Court.

Since the filing of the briefs in this appeal, the California Supreme Court decided *Dupuy* v. *Superior Court,* 15 Cal.3d 410 [124 Cal.Rptr. 900, 541 P.2d 540], which involved a jeopardy assessment (not a deficiency assessment) regarding taxpayer's income taxes and the seizure and sale powers of the state upon taxpayer's property. The California Supreme Court said seizure was proper but that taxpayer had a right to prohibit sale of seized property by writ of prohibition, otherwise "due process" would be violated under the United States Constitution, and taxpayer was thus to have administrative hearing. Here, plaintiff Faix has had "due process" accorded him by having the administrative hearing on his application for reduction of the assessments; therefore, *Dupuy* is distinguishable.

Legislature for payment of taxes (not merely a portion of taxes) under protest. Until accrual, the cause here would be but hypothetical and conjectural, and the trial court did not abuse any discretion in declining to entertain declaratory relief under these circumstances. (See, e.g., *Fracasse* v. *Brent,* 6 Cal.3d 784, 792-793 [100 Cal.Rptr. 385, 494 P.2d 9].)

Furthermore, the third count for declaratory relief is apparently an attack by plaintiff on the administrative proceedings and order, i.e., on the making of the assessments by the assessor and the order of the assessment appeals board in denying plaintiff's application for reduction in the assessments. ■ An action for declaratory relief may not be used to attack an administrative order. (*Scott* v. *City of Indian Wells,* 6 Cal.3d 541, 546 [99 Cal.Rptr. 745, 492 P.2d 1137].) Although under some circumstances such a pleading then may be considered as a petition for writ of mandate concerning the administrative order (*Scott* v. *City of Indian Wells, supra,* 6 Cal.3d at p. 546; *Hostetter* v. *Alderson,* 38 Cal.2d 499, 500 [241 P.2d 230]), mandamus here is not available. (*Sherman* v. *Quinn, supra,* 31 Cal.2d at p. 665; *Tivens* v. *Assessment Appeals Bd., supra,* 31 Cal.App.3d at p. 947; *Miller* v. *Ostly, supra,* 34 Cal.App.3d at pp. 195-196.)

In view of the foregoing, it is unnecessary to consider plaintiff's argument that it is entitled to a jury trial in the declaratory relief action.

Accordingly, we also hold there was no error in granting the motion for judgment on the pleadings as to plaintiff Faix's third count.

The judgment is affirmed.

Wood, P. J., and Thompson, J., concurred.