[No. C000480. Third Dist. Aug. 12, 1988.]

SCOTT-FREE RIVER EXPEDITIONS, INC., et al., Plaintiffs and Appellants, v.
COUNTY OF EL DORADO et al., Defendants and Respondents.

**COUNSEL**

J. Mark Nielsen, Karen Tustin and Nielsen & Tustin for Plaintiffs and Appellants.

David E. Whittington, County Counsel, and William E. Wright, Assistant County Counsel, for Defendants and Respondents.

## OPINION

PUGLIA, P. J.—In this case we reject a challenge to the El Dorado County Assessor's determination that appellants' exclusive and profitable use of the South Fork of the American River (river) for commercial rafting constitutes a taxable possessory interest.

Appellants (plaintiffs) are commercial rafting outfitters who operate on the river. Prior to 1981, defendant County of El Dorado (County) became concerned about the increasing use of the river by rafters, both commercial and noncommercial. (See *People* ex rel. *Younger* v. *County of El Dorado* (1979) 96 Cal.App.3d 403, 405-407 [157 Cal.Rptr. 815].) In January 1981, County established a use permit process to regulate the commercial use of the river. The permit system created a special class of users for profit who enjoy exclusive commercial use of the river. Plaintiffs are the members of that class.

When County first began to regulate the use of the river, it limited commercial use to those who could demonstrate previous commercial use of the river. Only those rafting outfitters who were qualified received permits, valid for one year but renewable annually. Since 1981 when the original permits were issued, plaintiffs' permits have been renewed each year. Since that time, no new permits have been issued.

In 1982, the El Dorado County Assessor determined plaintiffs' commercial use of the river for profit constituted a taxable possessory interest. (Rev. & Tax. Code, § 107.) Plaintiffs paid the taxes under protest and then instituted the underlying action against County, claiming there was no basis for assessing or collecting the taxes. (Rev. & Tax. Code, §§ 5097, 5140.) The trial court rendered a statement of decision which included the following findings and conclusions:

1. Plaintiffs' use of the river for commercial purposes constitutes a valid property right subject to taxation;

2. Plaintiffs' commercial use of the river is not a constitutionally protected right free from taxation;

3.   The 1850 Act of Congress admitting California to the union as a state does not prohibit the imposition of a possessory interest tax;

4.   Article X, section 4 of the California Constitution does not prohibit the imposition of a possessory interest tax;

5.   Plaintiffs' use of the river constitutes possession within the meaning of the law on possessory interest taxation;

6.   Plaintiffs' use of the river constitutes a taxable possessory interest as such use includes the requisite elements of exclusivity, durability and independence;

7.   The use permit does not constitute a contract; therefore, County was not required to inform plaintiffs that their use of the river might constitute a possessory interest subject to tax;

8.   Imposition of a possessory interest tax on plaintiffs' use of the river does not constitute double taxation.

The trial court entered judgment in favor of County. As we deem the trial court's statement of decision to be correct in all respects, we shall affirm.

I

■  "A possessory interest is basically a right to possession of property, such as a leasehold interest or the interest of an easement holder, permittee or licensee. Such interests are not usually assessed for property tax purposes separately from the fee unless there is a need to do so, such as where the fee is exempt from taxation and the property would otherwise escape taxation entirely." (Fn. omitted; Ehrman & Flavin, Taxing Cal. Property (1979) § 3.6, p. 93, hereafter cited as *Ehrman.*)

Section 201 of the Revenue and Taxation Code provides: "All property in this State, not exempt under the laws of the United States or of this State, is subject to taxation under this code." Section 103 of the Revenue and Taxation Code defines property as including "all matters and things, real, personal, and mixed, capable of private ownership." "Possessory interests" include "(a) Possession of, claim to, or right to the possession of land or improvements, except when coupled with ownership of the land or improvements in the same person. [¶] (b) Taxable improvements on tax-exempt land. . . ." (Rev. & Tax. Code, § 107.) Possessory interests in "land or improvements" are taxable pursuant to the constitutional mandate that,

with limited exceptions, "[a]ll property is taxable . . . ." (Cal. Const., art. XIII, § 1, subd. (a).)

Pursuant to its statutory authority, the State Board of Equalization has adopted extensive rules defining possessory interests. Rule 21 first defines a possessory interest in the language of Revenue and Taxation Code section 107 and further states the definition includes a leasehold interest, an easement, a profit a prendre, or any other legal, or equitable interest less than a fee, provided only the instrument which confers a right of possession or exclusive use is ". . . independent, durable and exclusive of rights held by others in the property." (Cal. Code Regs., tit. 18, § 21.)

The Supreme Court long ago recognized the taxability of a private possessory interest held in otherwise tax exempt property. In *State of California* v. *Moore* (1859) 12 Cal. 56, the court upheld a tax upon defendant's interest in a mining claim, even though the property itself was owned by the federal government: "The term 'property in lands' is not confined to title in fee, but is sufficiently comprehensive to include any usufructuary interest, whether it be a leasehold or a mere right of possession. Several persons may have, in the same land, a property which is subject to taxation, and it is not perceived that the fact, that the property of the Government is exempt from taxation, affects the right to tax the interest which private individuals have acquired in the same property. Exemption from taxation is a privilege of the Government, not an incident to the property. [¶] In the hands of the Government the lands are exempt, but the moment the title vests in a private individual, it becomes liable to the burdens which are imposed on other property of like character. If the acquisition of the fee by a private person subjects the property to taxation, it follows that the acquisition of a lesser estate would equally subject such estate." (At pp. 70-71.) Seven years later, the Supreme Court again acknowledged the use of public property for private benefit and gain constitutes a taxable property interest. (*People* v. *Shearer* (1866) 30 Cal. 645, 656-658.)

The *Shearer* decision answers a question posed by this court to the parties; namely, may the County grant to or create in plaintiffs a taxable possessory interest in property which is owned, not by the County, but by the State of California? (See *National Audubon Society* v. *Superior Court* (1983) 33 Cal.3d 419, 434-435 and fn.17 [189 Cal.Rptr. 346, 658 P.2d 709]. [The state owns " 'all of [the] navigable waterways and the lands lying beneath them "as trustee of a public trust for the benefit of the people." ' "])
■  The *Shearer* court made it clear the question of how the taxpayer acquires a possessory interest may be unimportant; i.e., as long as there is possession and valuable use of otherwise tax exempt property, a possessory

interest is established regardless of whether possession is by deed, lease, or under no claim of right whatsoever: "The possession itself of the public lands and the improvements thereon, *whether by naked trespassers,* or those who claim in addition a right of pre-emption, as to everybody except the United States, have always in California, and in most, if not all of the new States, been regarded as valuable property interests. . . . [¶] These possessions, then, are recognized as a species of property subsisting in the hands of the citizen. It is not the land itself, nor the title to the land, nor is it the identical estate held by the United States. It is not the pre-emption right, *but is the possession and valuable use of the land subsisting in the citizen.* Why should it not contribute its proper share, according to the value of the interest, whatever it may be, of the taxes necessary to sustain the Government which recognizes and protects it?" (Italics added, *Shearer, supra,* 30 Cal. at pp. 655, 657.)

In light of the decisional law which more than a century ago recognized the concept of a possessory interest tax, coupled with the broad statutory language defining possessory interests, a valuable and taxable possessory interest may be found in virtually any situation where a private citizen is allowed to use public property for personal gain. "There are almost no limits to which the possessory interest concept can be pushed [ ] and the general trend has been toward the expansion of taxable interests." (Fn. omitted; *Ehrman, op. cit. supra,* pp. 99, 96.)[1]

---

[1] The following represents only a sampling of the myriad of cases finding a possessory interest tax properly levied: *Cox Cable San Diego, Inc.* v. *County of San Diego* (1986) 185 Cal.App.3d 368, 384-386 [229 Cal.Rptr. 839] [upholding a possessory interest tax assessed upon plaintiff's use of public easements for their cable television system]; *Lucas* v. *County of Monterey* (1977) 65 Cal.App.3d 947, 956 [135 Cal.Rptr. 707] [preferred right to dock boat in harbor berth at public harbor held to be possessory interest]; *Stadium Concessions, Inc.* v. *City of Los Angeles* (1976) 60 Cal.App.3d 215, 223-226 [131 Cal.Rptr. 442] [concessionaire in a sports arena and coliseum operating under control of a city-county commission held to have a taxable possessory interest]; *Wells Nat. Services Corp.* v. *County of Santa Clara* (1976) 54 Cal.App.3d 579, 584-585 [126 Cal.Rptr. 715] [exclusive right to rent television sets to patients in a tax-exempt hospital held to be a taxable possessory interest]; *United States of America* v. *County of Fresno* (1975) 50 Cal.App.3d 633, 638-640 [123 Cal.Rptr. 548] [forest service employees residing in federally owned housing incident to employment held to have a taxable possessory interest]; *Sea-Land Service, Inc.* v. *County of Alameda* (1974) 36 Cal.App.3d 837, 842-844 [112 Cal.Rptr. 113] [preferred, nonexclusive right to use city port facilities for sole purpose of receiving and delivering freight held to constitute a taxable possessory interest]; *Board of Supervisors* v. *Archer* (1971) 18 Cal.App.3d 717, 725-728 [96 Cal.Rptr. 379] [federal grazing permits held to be a taxable possessory interest despite being nonexclusive, temporary and revocable]; *Mattson* v. *County of Contra Costa* (1968) 258 Cal.App.2d 205, 209-212 [65 Cal.Rptr. 646] [refreshment service in club house at municipal golf course held to constitute taxable possessory interest]; see generally *Ehrman, op. cit. supra,* at p. 101.)

## II

Plaintiffs raise numerous arguments on appeal in furtherance of their sole contention that the possessory interest tax levied upon their commercial use of the river cannot be sustained.

Plaintiffs first argue the flow of water in a navigable stream is not "property" subject to taxation. Revenue and Taxation Code section 103 defines property as ". . . all matters and things, real, personal, and mixed, capable of private ownership." As navigable waters are incapable of being privately owned (Cal. Const., art. X, § 4; Wat. Code, §§ 102, 1201), plaintiffs argue such waters do not constitute a species of property susceptible to a property or possessory interest tax.

Plaintiffs are not being taxed on the flow of the water in the river, but rather on their *use* of that water for commercial purposes. Water is unquestionably a species of real property and the right to use such water, whether that right be riparian, appropriative, or any other such right, is a valuable property right upon which a possessory interest tax may be levied. (*San Francisco* v. *County of Alameda* (1936) 5 Cal.2d 243, 245-247 [54 P.2d 462]; *County of Amador* v. *State Board of Equalization* (1966) 240 Cal.App.2d 205, 209 [49 Cal.Rptr. 448]; *County of Tuolumne* v. *State Board of Equalization* (1962) 206 Cal.App.2d 352, 360-364 [24 Cal.Rptr. 113].) "[T]he right of property in water is *usufructuary,* and consists not so much of the fluid itself as the advantage of its use." (Italics original, *Eddy* v. *Simpson* (1853) 3 Cal. 249, 252.) It is this " 'usufructuary right, that is, "the right of using and enjoying the profits of a thing belonging to another, without impairing the substance" . . . .' " that constitutes a species of property and thus a valuable property interest. (*Kaiser Co.* v. *Reid* (1947) 30 Cal.2d 610, 621 [184 P.2d 879].)

Although navigable waterways are not subject to private ownership, plaintiffs' use of those waters may nevertheless constitute a taxable possessory interest. This principle is established by decisional law regarding the leasing of state-owned tidelands. In *San Pedro etc. R. R. Co.* v. *Los Angeles* (1919) 180 Cal. 18 [179 P. 393], the plaintiff was a lessee of certain tidelands situated in the City of Los Angeles and belonging to the state. The city assessed plaintiff's leasehold estate with a possessory interest tax, which plaintiff paid and then challenged. In upholding the tax, the court explained: "Still less can it properly be said that because the interest of the state is not taxable, the private owner of a leasehold interest should be exempt from paying taxes upon the property that is owned by him." (*Id.,* at p. 22.) " 'The principle that a possessory right in public land is private

property, and that it may be assessed for purposes of taxation to the person in possession, although in point of law he may have no right as against the state or government owning the land, has long been settled in this state. [Citations.] . . . The possessors often derive and enjoy large revenues from [such interests]. . . . Such possession of the public lands . . . "in our judgment is clearly not exempt from taxation." ' " (*Id.,* at pp. 23-24.) If the exclusive use of state-owned tidelands, which are not capable of private ownership, can be held to constitute a valuable property right subject to taxation, then the equivalent commercial use of a navigable stream is likewise subject to such a tax. Thus, plaintiffs' exclusive right to use the public water of the state for private profit is taxable as a possessory interest in the same manner as the right to use public land is taxable as a possessory interest.

## III

Plaintiffs next contend the use of navigable water is a constitutionally protected right which extends to commercial rafting outfitters. Plaintiffs assert the right of the public to use navigable waters in this state is guaranteed by the 1850 Act of Congress (Act) admitting California as a state into the union and by the California Constitution.

The Act contains certain conditions, among them "[t]hat all the navigable waters within the . . . State shall be common highways, and forever free, as well to the inhabitants of said State as to the citizens of the United States, without any tax, impost, or duty therefor." (See *Cardwell* v. *American River Bridge Co.* (1884) 113 U.S. 205, 210 [28 L.Ed. 959, 961, 5 S.Ct. 423].)

Article X, section 4 of the California Constitution provides that no individual or entity "shall be permitted to exclude the right of way to [navigable] water whenever it is required for any public purpose, nor to destroy or obstruct the free navigation of such water . . . ." This section further provides that ". . . access to navigable waters of this State shall always be attainable for the people thereof."

Plaintiffs argue that in light of the foregoing, a possessory interest tax based on their use of the river, a navigable waterway (see *People* ex rel. *Younger* v. *County of El Dorado, supra*, 96 Cal.App.3d at p. 406), erodes the constitutionally protected status of the river as "always [] attainable for the people thereof."

Plaintiffs' arguments fail for numerous reasons. First, plaintiffs ignore the fact the waterways are in fact free of any tax or impost to all members of the

public who use the river for noncommercial purposes. While the navigable waterways in California are held in the public trust (Wat. Code, §§ 102, 1201; see *National Audubon Society* v. *Superior Court, supra*, 33 Cal.3d at p. 435 and fn. 17), this trust is for the public use. Plaintiffs have cited no authority granting them a constitutional right to the free and exclusive commercial use of the river.

More importantly, regardless of whether plaintiffs in fact have such a constitutional right, the issue here presented is whether plaintiffs have the right to the exclusive commercial use of public property without payment of the possessory interest tax. Article XIII, section 1 of the state Constitution provides that, with limited exceptions, all property is taxable. So long as plaintiffs have been granted the exclusive use of public property for private profit, such use constitutes a valuable, taxable property right under the Constitution. As was noted in *Stadium Concessions, Inc.* v. *City of Los Angeles, supra*, the basic theory underlying a possessory interest tax ". . . is to protect the public domain from private-profit operation without tax liability." (60 Cal.App.3d at p. 225.)

Nor are we persuaded by plaintiffs' argument that the instant tax violates the Act admitting California as a state to the union. The Act has been interpreted as intended solely to regulate interstate and foreign commerce under the commerce clause of the United States Constitution. (See *Pollard et al.* v. *Hagen et al.* (1845) 44 U.S. 212, 229-230 [11 L.Ed. 565, 573-574].) Assuming, arguendo, plaintiffs are engaged in interstate commerce, they have made no showing the tax levied impermissibly interferes with such commerce. Moreover, in keeping with the spirit of the Act, no tax is levied on the private, noncommercial use of the river.

In *Vallejo Ferry Co.* v. *Lang & Macpherson* (1911) 161 Cal. 672 [120 P. 421], plaintiff operated a ferry between the City of Vallejo (City) and Mare Island pursuant to a franchise granted plaintiff by the City. Defendants commenced operating a ferry in like fashion, but without any permit or franchise, and in violation of the terms of the franchise granted plaintiff. Plaintiff obtained injunctive relief against defendants' ferry operation and defendants appealed. One of the claims raised by defendants on appeal was that the Act admitting California as a state precluded City from requiring defendants to have a franchise to operate a ferry. Defendants claimed the requirement that a franchise was necessary to operate a ferry constituted an invasion of the right of free navigation in violation of the Act. The Supreme Court labeled this assertion "absolutely untenable." (*Id.*, at p. 675.) Plaintiffs' claim herein is no more tenable than that raised in *Vallejo Ferry Co.*

Finally, article X, section 4 of the state Constitution, which guarantees public access to the navigable waters of the state, does not preclude the assessment of a possessory interest tax upon commercial outfitters. Article X must be read together with article XIII, section 1, which states that unless otherwise provided by the Constitution or the laws of the United States "[a]ll property is taxable . . . ." ▉ It has long been the rule in California that exclusive use of public property for private profit constitutes a taxable interest in land. (*Kaiser Co.* v. *Reid, supra,* 30 Cal.2d at p. 618; *Lucas* v. *County of Monterey, supra,* 65 Cal.App.3d at p. 952.) Plaintiffs cite no authority for the proposition that article X, section 4 was intended to overturn this long-standing rule.

▉ Moreover, article X, section 4 states no more than that no individual or entity shall be permitted to exclude the right-of-way to navigable water in this state when it is required for any public purpose nor to destroy or obstruct the free navigation of such water. The possessory interest tax levied upon plaintiffs in no way compromises the spirit of this constitutional mandate. Noncommercial rafters may use the river free of any impost by the County. Equally important, the tax levied upon plaintiffs neither excludes their right to use the water nor destroys or obstructs the navigation of such water. Plaintiffs' reliance on article X, section 4 is misplaced.

## IV

▉ Plaintiffs next argue that the permit required to be secured by commercial rafting outfitters is simply a police power limitation upon use and cannot be parlayed into a grant of entitlement. Plaintiffs note that possessory interest taxes are imposed when a governmental entity, itself exempt from property taxation, grants to a nonexempt party a leasehold estate or other legal or equitable interest in real property. Here, however, plaintiffs claim a constitutional right to use of the river independent of any use permitted by the County. Plaintiffs assert there is no authority supporting the proposition that a possessory interest tax may be imposed when the origin of possessory use stems from a constitutional entitlement.

The fallacy contained in this argument is that plaintiffs have failed to demonstrate a constitutional right to the exclusive, commercial use of the river. What plaintiffs also fail to realize is their use of the river is different from the right held by members of the general public, as plaintiffs have the exclusive, independent right to use such property for *commercial* gain. As such, the use permit issued plaintiffs is a grant of a valuable property interest properly subject to tax. "A possessory interest [may be] a leasehold

interest or the interest of an easement holder, *permittee* or licensee." (See *Ehrman, op. cit. supra*, at p. 93, italics added.)

Finally, as noted above, *People* v. *Shearer* holds that it is unimportant how the exclusive possession of the property is acquired; as long as there is possession and valuable use of tax-exempt property, a possessory interest subject to tax may be established. (30 Cal. at pp. 656-658.)

V

In order for a valid possessory interest tax to be levied, it must be shown the right of possession or exclusive use is independent, durable and exclusive of rights held by others in the property. (See *Freeman* v. *County of Fresno* (1981) 126 Cal.App.3d 459, 463 [178 Cal.Rptr. 764]; *Lucas* v. *County of Monterey, supra*, 65 Cal.App.3d at pp. 955-956.) Plaintiffs argue all three elements are lacking here.

*Exclusivity*

Plaintiffs note there are at present approximately 80 commercial rafting outfitters who operate under permit on the river. Additionally, any private citizen may raft on the river without limitation or regulation. Plaintiffs argue these facts militate against a finding of exclusivity.

In *Sea-land Service, Inc.* v. *County of Alameda, supra*, the court found a taxable possessory interest in plaintiff's right to use a public harbor against a claim that the use was nonexclusive because the state had the right to use the premises for any vessel or other watercraft it owned or operated and, under the Tidelands Acts, the public also had access to the property. (36 Cal.App.3d at pp. 843-844.)

In *United States of America* v. *County of Fresno, supra*, the court upheld the assessment of a possessory interest tax upon federal employees who occupied government-owned housing. The employees' right to use the property was deemed exclusive even though their occupancy of a dwelling unit was required by the federal government, and the forest service (1) could temporarily evict them, (2) could house two employees in the same residence for a substantial period of time, and (3) could require an unmarried employee to move out to accommodate a married employee and his family. (50 Cal.App.3d at pp. 637-638.) "[T]he fact that a possessory right . . . is a condition of employment [citation] or to some extent must be shared with others [citation] does not mean, per se, that there is no taxable possessory interest. These, as well as similar controls on the right of possession, are the

factors to be considered in fixing the value of the possessory interests." (*Id.*, at p. 639.)

In *Board of Supervisors* v. *Archer, supra,* the court reversed a decision by the Board of Equalization that 68 grazing permits and agricultural leases issued by the federal government had no taxable value. "[T]o say that the right to pasture cattle on government land, even though that right is revocable at the government's will and may be required to be exercised with other cattle owners, has no cash value is unbelievable." (18 Cal.App.3d at p. 724.) The court continued: "[T]he permittees have possession and valuable use of the land that must be deemed sufficient to amount to a possessory interest within the meaning of Revenue and Taxation Code section 107. During the term of the permit and until revocation, the permittees are able to graze their cattle on federal tax-exempt land, and thereby contribute to the growth and profit of their business. . . . Although there is a danger that the government could grant more grazing permits for cattle than the grazing land could hold, this is a very remote danger that must not be used to cloud the fact that the permittees are presently enjoying the use of the federal lands for their cattle for the duration of the permit. The permittees should contribute their proper share, according to the value of the interest, for the possession and valuable use of the land. The right of the government to revoke or terminate the permit should be factors to consider in fixing its value." (Fn. omitted, *id.,* at p. 725.)

Finally, in *Lucas* v. *County of Monterey, supra,* the court upheld the assessment of a possessory interest tax based on plaintiff's permit to use a berth in a harbor district. The right to use the berth was held to be exclusive even though plaintiff could not assign or sublet the right without permission of the harbor board, the permit could be revoked without notice at any time, and the district could (1) relet the slip to another party while plaintiff's boat was absent from the harbor, (2) let other boat owners use the berth during the permit period, and (3) assign plaintiff's boat to other berths when plaintiff's berth was occupied by other vessels. The *Lucas* court held: "Although *Kaiser Co.* v. *Reid, supra,* 30 Cal.2d 610, defines 'possessory interest' as 'exclusive use,' 'exclusive' has been given broad interpretation by the courts. The nontransferability, the possibility of the permit's revocation, limitations on the possessory use, or sharing of the use do not go to determining whether the interest is possessory, but merely to valuation." (65 Cal.App.3d at p. 956.)

Here, the permit system commenced in 1981, with the County at that time issuing a number of permits. Since 1981, plaintiffs' permits have been renewed annually and no new permits have been issued. Because no

commercial use may be made of the river without a county permit, it is obvious plaintiffs have something more than a right in common with others. The right of the general public to use the river does not affect the exclusivity of plaintiffs' possessory interest, as only plaintiffs have a special right of access for profit. (Cf. *Freeman* v. *County of Fresno, supra,* 126 Cal.App.3d at 464.) Moreover, the fact that numerous permits were issued in 1981, allowing for competition, does not preclude a finding of possessory interest. (*Ibid.*)

### *Durability*

The county permits are valid for a one-year period. Plaintiffs claim a permit issued annually does not satisfy the element of durability, as the case law requires either a long-term contract or a long history of renewals of annual permits.

"The protax trend has found courts testing the requirement of a reasonably certain period of enjoyment by an examination of the agreement as stated in writing *and* the history of the relationship of the parties, thereby finding durability because of the passage of time even though the agreement may have been cancelable at the will of the parties." (Italics original, *Freeman* v. *County of Fresno, supra,* 126 Cal.App.3d at p. 463.)

In *Board of Supervisors* v. *Archer, supra,* the grazing permits issued by the United States Forest Service were valid for a one-year period. Nonetheless, the court found sufficient durability to assess a possessory interest tax, the length of the permit going only to the question of the value of the possessory interest. (18 Cal.App.3d at p. 724.) Other courts have found sufficient durability of the possessory interest notwithstanding that the right of use could be cancelled at the will of the governmental agency. (E.g., *Freeman* v. *County of Fresno, supra,* 126 Cal.App.3d at p. 463; *Lucas* v. *County of Monterey, supra,* 65 Cal.App.3d at p. 956.)

Here, the record shows plaintiffs engaged in the commercial use of the river prior to the initial issuance of permits in 1981. Since 1981, plaintiffs' permits have been renewed annually and no facts indicate the county will not in future years continue to renew plaintiffs' permits. Moreover, County affords a hearing prior to the revocation of a permit and plaintiffs' permits may not be revoked at will. Under the authorities discussed, plaintiffs' right to use of the river meets the test of durability. (See also *Dressler* v. *County of Alpine* (1976) 64 Cal.App.3d 557, 564 [134 Cal.Rptr. 554].)

*Independence*

■ To qualify as a taxable possessory interest, the right to use the property must be sufficiently independent of the owner's control. Thus, where the owner, i.e., the public entity, retains sufficient control, an agency exists and there is no taxable possessory interest. (See e.g., *Pacific Grove-Asilomar Operating Corp.* v. *County of Monterey* (1974) 43 Cal.App.3d 675, 687-692 [117 Cal.Rptr. 874].) ■ Plaintiffs assert that through the use permit system, County so regulated and controlled commercial river rafting that their use cannot be classified as a taxable possessory interest.

A case closely on point is *Freeman* v. *County of Fresno, supra*. There, the court upheld the assessment of a possessory interest tax against the owner of amusement machines permitted by the county to place them in public facilities for private profit. The county gave the taxpayer no assurance that competing businesses would not be given similar opportunities, imposed controls with respect to inspection, maintenance, insurance and the collection and accounting of the proceeds, and divided the receipts with the plaintiff taxpayer who received 50 to 75 percent. The agreement also contained a 10-day cancellation clause. (126 Cal.App.3d at p. 462.)

The *Freeman* court found sufficient independence to warrant the levy of a possessory interest tax. "We do not find that independence from public control is a key to taxability. The nature of the equipment concerned is such that both parties should be concerned with location, access, visibility, maintenance, public safety, and the ultimate purpose of profit. That the public agency may appear to have the right to dictate conditions which may reduce profits goes to the question of valuation, not to whether the use is or is not exclusive." (126 Cal.App.3d at pp. 464-465.)

Likewise, in *Mattson* v. *County of Contra Costa*, the court upheld a possessory interest tax based upon plaintiff's right to operate a refreshment stand at a municipal golf course. The city controlled the plaintiff's operating hours, set prices, required the city manager to approve price changes, controlled the advertising, and retained the privilege of terminating plaintiff's right to operate the stand should the food or service fall below a certain standard. Nonetheless, the *Mattson* court found plaintiff's right exclusive and independent. (*Mattson, supra*, 258 Cal.App.2d at pp. 208-209, 211-212.)

Here, although County regulates certain aspects of plaintiffs' operations, plaintiffs are engaged in commercial enterprise for profit, not for any governmental purpose. "[T]he profit motive is a significant factor in determin-

ing the nature of the taxpayer's interest." (*Wells Nat. Services Corp.* v. *County of Santa Clara, supra*, 54 Cal.App.3d at p. 585.) We are satisfied plaintiffs do not operate as agents or adjuncts of County.

"In more recent times, the three . . . requirements [exclusivity, durability and independence] have been applied in a less demanding way so as to find a taxable interest in most cases in which the private use of public property has been special to the person concerned and valuable. . . . [T]he focus has been on the belief that the holder of a valuable use of public property that is tax exempt should contribute taxes to the public entity which makes its possession possible and provides a certain amount of exclusivity." (*Freeman* v. *County of Fresno, supra*, 126 Cal.App.3d at p. 463.)

Under the facts here presented, the requirements of exclusivity, durability and independence are clearly established.

## VI

■ The next question we address is whether County's failure to inform plaintiffs they might be subject to a possessory interest tax when County initiated its permit regulation system entitles plaintiffs to a refund of taxes paid. Plaintiffs rely on Revenue and Taxation Code section 107.6, which provides: "(a) The state or any local public entity of government, when entering into a written contract with a private party whereby a possessory interest subject to property taxation may be created, shall include, or cause to be included, in such contract, a statement that such property interest may be subject to property taxation if created, and that the party in whom the possessory interest is vested may be subject to the payment of property taxes levied on such interest. [¶] (b) Failure to comply with requirements of this section shall not be construed to invalidate the contract. The private party may recover damages from the contracting state or local public entity, where the private party can show that without the notice, he had no actual knowledge of the existence of a possessory interest tax. [¶] The private party is rebuttably presumed to have no such actual knowledge. [¶] In order to show damages, the private party need not show that he would not have entered the contract but for the failure of notice. . . . [¶] (4) 'Damages' mean the amount of the possessory interest tax for the term of the contract."

The parties have stipulated County did not include in the initial use permit process any statement informing plaintiffs the right to benefits derived by virtue of such permit could be subject to possessory interest tax. They have further stipulated that prior to the 1982 tax year, plaintiffs had

no actual knowledge of or any exposure to a possible imposition of a possessory interest tax.

The use permit issued by the County is not a contract within the meaning of Revenue and Taxation Code section 107.6. A contract requires consideration. Plaintiffs have not suggested any consideration for their exclusive use of the river. We conclude the permits were issued by virtue of the County's police power and do not constitute a contract such that notice of potential liability for a possessory interest tax was required.

## VII

Plaintiffs' final claim is the possessory interest tax presently imposed constitutes double taxation. Plaintiffs argue the taxation of the land underlying the navigable stream, coupled with the additional taxation of plaintiffs' possessory interest in the river, constitute double taxation.

"Double taxation occurs only when 'two taxes of the same character are imposed on the same property, for the same purpose, by the same taxing authority within the same jurisdiction during the same taxing period.' [Citation.]" (*Associated Home Builders etc., Inc.* v. *City of Walnut Creek* (1971) 4 Cal.3d 633, 642 [94 Cal.Rptr. 630, 484 P.2d 606, 43 A.L.R.3d 847].)

In *Alpaugh Irr. Dist.* v. *County of Kern* (1952) 113 Cal.App.2d 286, 294 [248 P.2d 117], the court held that water rights and the ownership of the real property may be separately assessable and taxable. Likewise in *Faix Ltd.* v. *County of Los Angeles* (1976) 54 Cal.App.3d 992, 998-999 [127 Cal.Rptr. 182], it was held a separate assessment and taxation of appropriative or prescriptive water rights is not double taxation, even where the underlying property is separately taxed. Plaintiffs' exclusive, commercial use of the river is a separate property interest and subject to separate taxation.

The judgment is affirmed.

Carr, J., and Sparks, J., concurred.

Appellants' petition for review by the Supreme Court was denied November 9, 1988.